UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MASSACHUSETTS

04 12252

MAGISTRATE JUDGE _____

ACE AMERICAN INSURANCE COMPANY, FEDERAL )
INSURANCE COMPANY, INSURANCE COMPANY OF )
NORTH AMERICA, MARYLAND CASUALTY COMPANY )
and NORTHERN INSURANCE COMPANY )
    Plaintiffs, )
) C.A. No.:
v. )
)
CROSBY YACHT YARD, INC. and )
OYSTER HARBORS MARINE, INC. )
    Defendants. )
)

RECEIPT # 59591
AMOUNT $150
SUMMONS ISSUED YES
LOCAL RULE 4.1
WAIVER FORM
MCF ISSUED
BY DPTY. CLK.
DATE

**PLAINTIFFS' COMPLAINT AND DEMAND FOR JURY TRIAL**

**JURISDICTIONAL ALLEGATIONS**

1. The Plaintiffs are five insurance companies: ACE American Insurance Company, Federal Insurance Company, Insurance Company of North America, Maryland Casualty Company and Northern Insurance Company. The Plaintiffs are subrogated to the rights of certain claimants referred to below, to the extent of the payments made to those claimants to compensate them for losses incurred as a result of a fire (the "Fire") which occurred on December 10, 2003 at the Crosby Yacht Yard, in Osterville, Massachusetts (the "Crosby Premises") and at the Oyster Harbors Marine, in Osterville, Massachusetts (the "Oyster Harbors Premises").

2. The Plaintiff Northern Insurance Company (Northern Insurance Company is hereinafter sometimes referred to as "Northern") is a duly organized corporation existing under the laws of New York with a principal place of business at 185

Broadway, New York, New York. Northern has made payments under certain policies of insurance to, and is subrogated to the rights of, the following claimants: David Evans, P.O. Box 127, Laughlintown, PA 15655; William Henry, 140 Highland Street, West Newton, Massachusetts 02465; James Shay, 32 Lovers Lane, Southborough, Massachusetts 01772; Mortimer Buckley, P.O. Box 411, Osterville, Massachusetts 02655; Paul Clapp, P.O. Box 2856, Acton, Massachusetts 01720; Kevin Starr, 7 The Cartway, Mashpie, MA 02649.

3. The Plaintiff Maryland Casualty Company (Maryland Casualty Company is hereinafter sometimes referred to as "Maryland Casualty") is a duly organized corporation existing under the laws of Maryland with a principal place of business at 3910 Keswick Road, in Baltimore, Maryland. Maryland Casualty has made payments under certain policies of insurance to, and is subrogated to the rights of, the following claimant: Paul Donahue, 170 Newbury Street, Boston, MA 02116.

4. The Plaintiff Federal Insurance Company (Federal Insurance Company is hereinafter sometimes referred to as "Federal") is a duly organized corporation existing under the laws of Indiana, with a principal place of business at 15 Mountain View Road, in Warren, New Jersey. Federal Insurance Company has made payments under certain policies of insurance to, and is subrogated to the rights of, the following claimants: Soldier of Fortune Corporation, 365 Boston Post Road No. 114, Sudbury, Massachusetts 01776; Diane L. Comoletti, 25 Myers Farm Road, Hingham, Massachusetts 02043; Seward Johnson, Jr., P.O. Box 550, Princeton, New Jersey 08542; Warren and Pamela Foss, 35 Elm Rock Road, Bronxville, New York 10708; Ronald and Diane Miller, 311 Miller

Avenue, Mill Valley, California 94941; William Weber and Kathy Rochefort, 30 Upland Road, Brookline, Massachusetts 02146; Christopher Kennedy, 158 Melrose Street, Kenilworth, Illinois 60043; Francis and Dawn Saul, 7501 Wisconsin Avenue, Number 1500, Bethesda, Maryland 20814; Nicholas and Evelyn Abraham, 581 Boylston Street, Boston, Massachusetts 02116; Terry Eastman, 50 Pigeon Hill Road, Weston, Massachusetts 02493.

5. The Plaintiff ACE American Insurance Company (ACE American Insurance Company is hereinafter sometimes referred to as "ACE") is a duly organized corporation existing under the laws of Pennsylvania, with a principal place of business at Two Liberty Place, 1601 Chestnut Street, Philadelphia, Pennsylvania 19103. ACE has made payments under certain policies of insurance to, and is subrogated to the rights of, the following claimants: Eunice Shriver, 9109 Harrington Drive, Potomac, MD 20864; Robert Tarr, 3 Commonwealth Avenue Unit 2, Boston, Massachusetts 02116.

6. The Plaintiff Insurance Company of North America (Insurance Company of North America is hereinafter sometimes referred to as "INA") is a duly organized corporation existing under the laws of Pennsylvania, with a principal place of business at Two Liberty Place, 1601 Chestnut Street, Philadelphia, Pennsylvania 19103. INA has made payments under certain policies of insurance to, and is subrogated to the rights of, the following claimants: John Welsh, 4132 South Rainbow Street, Las Vegas, Nevada 89103; James Harrington, 18 Eastern Point Drive, Shrewsbury, Massachusetts 01545.

7. The Defendant, Crosby Yacht Yard, Inc. (Crosby Yacht Yard, Inc. is hereinafter sometimes referred to as "Crosby Yacht Yard"), is a duly organized corporation existing under the laws of Massachusetts, with a principal place of business at 72 Crosby Circle, Osterville, Massachusetts 02655.

8. The Defendant, Oyster Harbors Marine, Inc. (Oyster Harbors Marine, Inc. is hereinafter sometimes referred to as "Oyster Harbors") is a duly organized corporation existing under the laws of Massachusetts, with a principal place of business at 122 Bridge Street, Osterville, Massachusetts 02655.

9. This court has jurisdiction over this action pursuant to 28 U.S.C. § 1332 in that complete diversity exists as to the parties, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

10. Venue is proper under 28 U.S.C. § 1391(a) in that the actions complained of occurred within this District.

## INTRODUCTION

11. On or about December 10, 2003, a fire (hereinafter the "Fire") occurred at the Crosby Premises, a boat storage and repair facility in Osterville, Massachusetts, which is owned and operated by the Defendant, Crosby Yacht Yard. The fire caused severe damage to boats and other personal property delivered there by boat owners for winter storage, service, and repair. The Fire also caused severe damage to boats stored at the Oyster Harbors Premises, which premises abut the Crosby Premises.

12. J. Seward Johnson, Jr., William Weber, Christopher Kennedy, Nicholas Abraham, B. Francis Saul III, Eunice Shriver, John Welsh, Kevin Starr, Mortimer Buckley, James Shay, William Henry and David Evans (hereinafter sometimes referred to collectively as the "Crosby Claimants") delivered their boats and certain personal property to the Crosby Yacht Yard, for winter storage, service, and repair during the winter of 2003-2004. The Crosby Claimants' boats and certain items of personal property listed below (hereinafter sometimes referred to collectively as the Crosby Claimants' "Personal Property") were accepted by and were left with the Crosby Yacht Yard pursuant to contracts for storage and/or service. The Crosby Claimants' Personal Property was to be returned after the winter season of 2003-2004. On and prior to December 10, 2003, the Defendant Crosby Yacht Yard was in exclusive possession, and exercised exclusive control over, the Crosby Claimants' Personal Property. After delivery of the Personal Property by the Crosby Claimants to the Defendant Crosby Yacht Yard, the Crosby Yacht Yard took no steps to relinquish possession or control over any of the Personal Property.

13. Soldier of Fortune Corporation, Diane L. Comoletti, Ronald Miller, Terry Eastman, Paul Clapp, Paul Donahue, Robert Tarr, James Harrington and Warren Foss (hereinafter sometimes referred to collectively as the "Oyster Claimants") delivered their boats and certain personal property to Oyster Harbors, for winter storage, service, and repair during the winter of 2003-2004. The Oyster Claimants' boats and certain items of personal property listed below (hereinafter sometimes referred to collectively as the Oyster Claimants' "Personal Property")

were accepted by and were left with Oyster Harbors pursuant to contracts for storage and/or service. The Crosby Claimants' Personal Property was to be returned after the winter season of 2003-2004. On and prior to December 10, 2003, Oyster Harbors was in exclusive possession, and exercised exclusive control over, the Oyster Claimants' Personal Property. After delivery of the Personal Property by the Oyster Claimants to the Defendant Oyster Harbors, Oyster Harbors took no steps to relinquish possession or control over any of the Personal Property.

14. The Personal Property of the Crosby Claimants was damaged and/or destroyed while on the Crosby Premises during storage.

15. The Personal Property of the Oyster Claimants was damaged and/or destroyed while on the Oyster Harbors Premises during storage.

16. Pursuant to individual policies of insurance, ACE, Federal, INA, Maryland Casualty and Northern paid the Crosby Claimants and the Oyster Claimants (the Crosby Claimants and the Oyster Claimants are hereinafter sometimes referred to collectively as the "Claimants") to compensate them for their losses as a result of the fire. INA paid $9,500 to James Harrington, and $202,500 to John Welsh; ACE paid $24,424 to Eunice Shriver, and $469.99 to Robert Tarr, withholding his deductible of $250; Northern paid $60,000 to David Evans, $15,000 to William Henry, $24,900 to James Shay, withholding his deductible of $100, $3,118 to Mortimer Buckley, $9,620 to Paul Clapp, and $425,000 to Kevin Starr; Maryland Casualty paid $5,400 to Paul Donahue; Federal paid $223,055.94 to Soldier of Fortune Corporation, withholding its deductible of $36,840, $225,133.54 to Diane

L. Comoletti, withholding her deductible of $18,135, $35,000 to J. Seward Johnson, withholding his $1,000 deductible, $3,000 to Warren and Pamela Foss, $28,800 to Francis and Dawn Saul, $40,000 to Ronald and Diane Miller, $45,000 to Christopher Kennedy, $17,000 to Terry Eastman, $183,389.37 to Nicholas and Evelyn Abraham, and $6,440 to William Weber and Kathy Rochefort, withholding their deductible of $250.

17. The Plaintiffs ACE, Federal, INA, Maryland Casualty and Northern (ACE, Federal, INA, Maryland Casualty and Northern are hereinafter sometimes referred to collectively as the "Plaintiffs"), as subrogees to the extent of payments made to the Claimants, claim that: the Crosby Yacht Yard breached its contract to store, service and/or repair the Crosby Claimants' Personal Property; the Crosby Yacht Yard breached its warranty to adequately store and keep from harm the Personal Property of the Crosby Claimants; the Crosby Yacht Yard failed to return the Crosby Claimants' Personal Property to the Crosby Claimants after the 2003-2004 winter season; the Crosby Yacht Yard failed to exercise reasonable care in storing, servicing, and/or repairing the Personal Property of the Crosby Claimants; and that the Crosby Yacht Yard failed to exercise reasonable care in the operation of its business. The Plaintiffs claim that Oyster Harbors breached its contract to store, service and/or repair the Oyster Claimants' Personal Property; that Oyster Harbors breached its warranty to adequately store and keep from harm the Personal Property of the Oyster Claimants; that Oyster Harbors failed to return the Oyster Claimants' Personal Property to the Claimants after the 2003-2004 winter season; and that Oyster Harbors failed to exercise reasonable care in storing,

servicing, and/or repairing the Personal Property of the Oyster Claimants. The Plaintiffs ACE, Federal, INA, Maryland Casualty and Northern, each, under a claim of subrogation, seek recovery from Crosby Yacht Yard and Oyster Harbors of the amounts paid to the Claimants.

### SUBSTANTIVE ALLEGATIONS

18. At all times relevant to the instant litigation, Crosby Yacht Yard conducted various boat building and repair activities on the Crosby Premises. Upon information and belief, Crosby's business activities involved the use, handling and storage of hazardous, flammable and/or combustible materials on the Crosby Premises.

19. At all times relevant to the instant litigation, Oyster Harbors conducted various boat building and repair activities on the Oyster Harbors Premises. Upon information and belief, Oyster Harbors' business activities involved the use, handling and storage of hazardous, flammable and/or combustible materials on the Oyster Harbors Premises.

20. Upon information and belief, at all times relevant to the instant litigation, Crosby Yacht Yard did not have in use automatic fire suppression equipment and did not use, handle or store hazardous materials in the manner required by the applicable regulations, including, but not limited to 527 C.M.R. 14, in violation of orders of the Barnstable Fire Marshall, and in breach of its duty of care.

21. At all times relevant to the instant litigation, Crosby Yacht Yard was engaged in an ongoing contractual business relationship with the Crosby Claimants whereby

the Personal Property owned by the Crosby Claimants was delivered to the Crosby Yacht Yard and stored on its Premises for a fee charged by the Crosby Yacht Yard. For additional fees, Crosby Yacht Yard performed certain maintenance and repair related to the upkeep of the boats and related items.

22. As part of the business arrangement between Crosby Yacht Yard and the Crosby Claimants, it was and is the regular business practice of Crosby Yacht Yard to accept, store, repair and maintain such personal property on the Crosby Premises.

23. Crosby Yacht Yard entered into an agreement (the "Crosby storage agreement") with each of the Crosby Claimants with respect to the storage of the Personal Property.

24. At all times relevant to the instant litigation, Oyster Harbors was engaged in an ongoing contractual business relationship with the Oyster Claimants whereby the Personal Property owned by the Oyster Claimants was delivered to Oyster Harbors and stored on its Premises for a fee charged by Oyster Harbors. For additional fees, Oyster Harbors performed certain maintenance and repair related to the upkeep of the boats and related items.

25. As part of the business arrangement between Oyster Harbors and the Oyster Claimants, it was and is the regular business practice of Oyster Harbors to accept, store, repair and maintain such personal property on the Oyster Premises.

26. Oyster Harbors entered into an agreement (the "Oyster storage agreement") with each of the Oyster Claimants with respect to the storage of the Personal Property.

27. Prior to December 10, 2003, Chubb's insured, Soldier of Fortune Corp., delivered its boat – the "War Chant," a 2003 61 foot Viking Sport Fisherman - to the Oyster

Premises and placed it in the care, control, custody and possession of Oyster Harbors to be stored for the winter of 2003-2004. Delivered along with the boat were certain items of personal property.

28. Prior to December 10, 2003, Chubb's insured, Diane L. Comoletti, delivered her boat – the "Four Seas," a 2004 56 foot Viking Sport Fisherman - to the Oyster Premises and placed it in the care, control, custody and possession of Oyster Harbors to be stored for the winter of 2003-2004. Delivered along with the boat were certain items of personal property.

29. Prior to December 10, 2003, Chubb's insured, J. Seward Johnson, Jr. delivered his boat – a 1988 25 foot Wianno Senior – to the Crosby Premises and placed it in the care, custody and possession of Crosby Yacht Yard to be stored for the winter of 2003-2004. Delivered along with the boat were certain items of personal property.

30. Prior to December 10, 2003, Chubb's insureds Warren and Pamela Foss delivered their boat – a 1993 16 foot Verchere Runabout - to the Oyster Premises and placed it in the care, control, custody and possession of Oyster Harbors to be stored for the winter of 2003-2004. Delivered along with the boat were certain items of personal property.

31. On or about October 1, 2003, Chubb's insured Terry Eastman delivered his boat – a 1990 17 foot Boston Whaler Newport – to the Oyster Premises and placed it in the care, control, custody and possession of Oyster Harbors to be stored for the winter of 2003-2004. Delivered along with the boat were certain items of personal property.

32. On or about October 1, 2003, Chubb's insured Ronald Miller delivered his boat – a 1996 16 foot Haven 12 1/2 – to the Oyster Premises and placed it in the care, control, custody and possession of Oyster Harbors to be stored for the winter of 2003-2004. Delivered along with the boat were certain items of personal property.

33. On or about October 30, 2003, Chubb's insured William Weber delivered his boat – a 1951 15 foot Old Town - to the Crosby Premises and placed it in the care, control, custody, and possession of Crosby Yacht Yard to be stored for the winter of 2003-2004. Delivered along with the boat were certain items of personal property.

34. Prior to December 10, 2003, Chubb's insured Christopher Kennedy delivered his boat – the "Resolute," a 25 foot Wianno Senior - to the Crosby Premises and placed it in the care, control, custody, and possession of Crosby Yacht Yard to be stored for the winter of 2003-2004. Delivered along with the boat were certain items of personal property.

35. Prior to December 10, 2003, Chubb's insured Nicholas Abraham delivered his boat – a 1999 33 foot Sal Shaker 330 - to the Crosby Premises and placed it in the care, control, custody, and possession of Crosby Yacht Yard to be stored for the winter of 2003-2004. Delivered along with the boat were certain items of personal property.

36. On or about October 1, 2003, Chubb's insured Francis Saul III delivered his boat – the "Yankee Dime," a 1969 Wianno Senior Sloop - to the Crosby Premises and placed it in the care, control, custody, and possession of Crosby Yacht Yard to be

stored for the winter of 2003-2004. Delivered along with the boat were certain items of personal property.

37. Prior to December 10, 2003, Zurich's insured Kevin Starr delivered his boat – the "Miss Daire II," a 2001 44 ½ foot Uniesse 42 - to the Crosby Premises and placed it in the care, control, custody, and possession of Crosby Yacht Yard to be stored for the winter of 2003-2004. Delivered along with the boat were certain items of personal property.

38. Prior to December 10, 2003, Zurich's insured James Shay delivered his boat – a 1973 25 ½ foot Wianno Senior- to the Crosby Premises and placed it in the care, control, custody, and possession of Crosby Yacht Yard to be stored for the winter of 2003-2004. Delivered along with the boat were certain items of personal property.

39. Prior to December 10, 2003, Zurich's insured Mortimer Buckley delivered his boat – a 2001 10 foot Caribe - to the Crosby Premises and placed it in the care, control, custody, and possession of Crosby Yacht Yard to be stored for the winter of 2003-2004. Delivered along with the boat were certain items of personal property.

40. Prior to December 10, 2003, Zurich's insured William Henry delivered his boat – a 1973 25 foot Crosby Sailboat - to the Crosby Premises and placed it in the care, control, custody, and possession of Crosby Yacht Yard to be stored for the winter of 2003-2004. Delivered along with the boat were certain items of personal property.

41. Prior to December 10, 2003, Zurich's insured David Evans delivered his boat – a 1957 24 foot Crosby Cruiser - to the Crosby Premises and placed it in the care, control, custody, and possession of Crosby Yacht Yard to be stored for the winter of 2003-2004. Delivered along with the boat were certain items of personal property.

42. Prior to December 10, 2003, Zurich's insured Paul Donahue delivered his boat – a 1984 14 foot Beetle Cat - to the Crosby Premises and placed it in the care, control, custody, and possession of Crosby Yacht Yard to be stored for the winter of 2003-2004. Delivered along with the boat were certain items of personal property.

43. Prior to December 10, 2003, Zurich's insured Paul Clapp delivered his boat – the "Mauly," a 2003 35 foot Cabo Flybridge - to the Oyster Premises and placed it in the care, control, custody, and possession of Oyster Harbors to be stored for the winter of 2003-2004. Delivered along with the boat were certain items of personal property.

44. Prior to December 10, 2003, ACE's insured Eunice Shriver delivered her boat – the "Rose of All Roses," a 1967 25 foot Wianno - to the Crosby Premises and placed it in the care, control, custody, and possession of Crosby Yacht Yard to be stored for the winter of 2003-2004. Delivered along with the boat were certain items of personal property.

45. Prior to December 10, 2003, ACE's insured Robert Tarr delivered his outboard motor - a 2003 3.3 hp Mercury - to the Oyster Premises and placed it in the care, control, custody, and possession of Oyster Harbors to be stored for the winter of 2003-2004.

46. Prior to December 10, 2003, ACE's insured John Welsh delivered his boat – the "Kariel," a 1994 33 foot Blackfin - to the Crosby Premises and placed it in the care, control, custody, and possession of Crosby Yacht Yard to be stored for the winter of 2003-2004. Delivered along with the boat were certain items of personal property.

47. Prior to December 10, 2003, ACE's insured James Harrington delivered his boat – a 1998 13 1/2 foot Boston Whaler - to the Oyster Premises and placed it in the care, control, custody, and possession of Oyster Harbors to be stored for the winter of 2003-2004.

48. Upon delivery of the Crosby Claimants' Personal Property to Crosby Yacht Yard at the Crosby Premises, Crosby Yacht Yard exercised exclusive control over the Personal Property until the time of the Fire.

49. Upon delivery of the Oyster Claimants' Personal Property to Oyster Harbors at the Oyster Harbors Premises, Oyster Harbors exercised exclusive control over the Personal Property until the time of the Fire.

50. On and before the Fire, Crosby Yacht Yard was in exclusive possession of the Personal Property of the Crosby Claimants pursuant to the business arrangement described above. The Personal Property includes the boats as well as certain other items of property including, but not limited to, trailers, fishing gear, S.C.U.B.A. gear, radios and electronic equipment. At all times relevant to this litigation, the Personal Property of the Crosby Claimants was located on the Crosby Premises and in the care, control, custody, and possession of Crosby Yacht Yard.

51. On and before the Fire, Oyster Harbors was in exclusive possession of the Personal Property of the Oyster Claimants pursuant to the business arrangement described above. The Personal Property includes the boats as well as certain other items of property including, but not limited to, trailers, fishing gear, S.C.U.B.A. gear, radios and electronic equipment. At all times relevant to this litigation, the Personal Property of the Oyster Claimants was located on the Oyster Harbors Premises and in the care, control, custody, and possession of Oyster Harbors.

52. On or about December 10, 2003, the Fire erupted in and/or around buildings situated on the Crosby Premises in which the Claimants' Personal Property was stored.

53. The Fire caused extensive damage to the Personal Property of the Crosby Claimants located on the Crosby Premises and in the care, control, custody and possession of Crosby Yacht Yard pursuant to the Crosby Storage Agreements between the Crosby Claimants and Crosby Yacht Yard.

54. The Fire caused extensive damage to the Personal Property of the Oyster Claimants located on the Oyster Harbors Premises and in the care, control, custody and possession of Oyster Harbors pursuant to the Oyster Storage Agreements between the Oyster Claimants and Oyster Harbors.

55. Crosby Yacht Yard has failed to return the Crosby Claimants' Personal Property to the Crosby Claimants in the same condition in which it was received by Crosby Yacht Yard for storage.

56. Oyster Harbors has failed to return the Oyster Claimants' Personal Property to the Oyster Claimants in the same condition in which it was received for storage.

57. The Plaintiffs ACE American Insurance Company, Federal Insurance Company, Insurance Company of North America, Maryland Casualty Company and Northern Insurance Company made payments to the Claimants to compensate them for damages to the Claimants' Personal Property caused by the Fire. INA paid $9,09.70 to James Harrington, and $202,500 to John Welsh; ACE paid $24,424 to Eunice Shriver, and $469.99 to Robert Tarr; Northern paid money to David Evans, $15,000 to William Henry, $24,000 to James Shay, $3,118 to Mortimer Buckley, $5,880 to Paul Clapp, and $425,000 to Kevin Starr; Maryland Casualty paid $5,400 to Paul Donahue; Federal paid $259,895.94 to Soldier of Fortune Corporation, $243,268.54 to Diane L. Comoletti, $35,000 to J. Seward Johnson, $3,000 to Warren and Pamela Foss, $28,800 to Francis and Dawn Saul, $40,000 to Ronald and Diane Miller, $45,000 to Christopher Kennedy, $17,000 to Terry Eastman, $183,389.37 to Nicholas and Evelyn Abraham, and $6,690 to William Weber and Kathy Rochefort.

58. The Plaintiffs ACE, Federal, INA, Maryland Casualty and Northern are subrogated to the rights of the Claimants in the Personal Property to the extent of the payments made to the Claimants.

## COUNT I
### Bailment
### (Plaintiffs v. Crosby Yacht Yard)

59. The Plaintiffs repeat and incorporate by reference the allegations contained in paragraphs 1 through 58, as if they were fully set forth herein.

60. The Crosby Claimants delivered their Personal Property in trust to Crosby Yacht Yard for the specific purpose of winter storage. The Personal Property was

delivered into the control of, and was accepted by, Crosby Yacht Yard. The Personal Property was to be returned to the Crosby Claimants in the Spring of 2004.

61. Crosby Yacht Yard failed to return the Personal Property to the Crosby Claimants in the same condition in which it was received by Crosby Yacht Yard. As a result of Crosby Yacht Yard's failure to return the Personal Property in the same condition, the Crosby Claimants were caused to suffer substantial property damage, and were put to great expense in the repair and replacement of said property and were otherwise damaged.

62. The Plaintiffs, ACE, Federal, INA, Maryland Casualty and Northern, made payments to the Crosby Claimants to compensate them for the damages caused by Crosby Yacht Yard's failure to return the Personal Property to the Crosby Claimants in the same condition as when delivered to Crosby Yacht Yard.

63. The Plaintiffs, ACE, Federal, INA, Maryland Casualty and Northern, are subrogated to the rights of the Crosby Claimants to the extent of the payments made to the Crosby Claimants.

**WHEREFORE**, the Plaintiffs pray that the Court issue judgment against Crosby Yacht Yard in an amount to fairly compensate the Plaintiffs for their damages, together with costs, interest, and such relief that the Court deems fair and reasonable.

### COUNT II
### BAILMENT
### (Plaintiffs v. Oyster Harbors)

64. The Plaintiffs repeat and incorporate by reference the allegations contained in paragraphs 1 through 63, as if they were fully set forth herein.

65. The Oyster Claimants delivered their Personal Property in trust to Oyster Harbors for the specific purpose of winter storage. The Personal Property was delivered into the control of, and was accepted by, Oyster Harbors. The Personal Property was to be returned to the Oyster Claimants in the Spring of 2004.

66. Oyster Harbors failed to return the Personal Property to the Oyster Claimants in the same condition in which it was received by Oyster Harbors. As a result of Oyster Harbors' failure to return the Personal Property in the same condition, the Oyster Claimants were caused to suffer substantial property damage, and were put to great expense in the repair and replacement of said property and were otherwise damaged.

67. The Plaintiffs, ACE, Federal, INA, Maryland Casualty and Northern, made payments to the Oyster Claimants to compensate them for the damages caused by Oyster Harbors' failure to return the Personal Property to the Oyster Claimants in the same condition as when delivered to Oyster Harbors.

68. The Plaintiffs, ACE, Federal, INA, Maryland Casualty and Northern, are subrogated to the rights of the Oyster Claimants to the extent of the payments made to the Oyster Claimants.

**WHEREFORE**, the Plaintiffs pray that the Court issue judgment against Oyster Harbors in an amount to fairly compensate the Plaintiffs for their damages, together with costs, interest, and such relief that the Court deems fair and reasonable.

### COUNT III
### Negligence
### (Plaintiffs v. Crosby Yacht Yard)

69. The Plaintiffs repeat and incorporate by reference the allegations contained in paragraphs 1 through 68, as if they were fully set forth herein.

70. Crosby Yacht Yard, through its agents, servants, and employees, owed the Claimants a duty to use ordinary diligence and reasonable care in the storage and protection of the Personal Property and a duty to use ordinary diligence and reasonable care at all times in the conducting of its business.

71. Crosby Yacht Yard breached its duty to the Claimants, and its breaches included, but were not limited to the following:

   a. Crosby Yacht Yard failed to use reasonable care in the manner in which it kept, stored and maintained its supplies and materials on the Crosby Premises.

   b. Crosby Yacht Yard failed to use reasonable care in the manner in which it stored and protected the Personal Property that was delivered into its care, control, custody and possession.

   c. Crosby Yacht Yard failed to maintain adequate fire prevention, detection and/or fire suppression equipment on the Crosby Premises.

   d. Crosby Yacht Yard failed to comply with applicable codes, statutes and regulations relating to fire safety, fire prevention, fire detection and fire suppression.

72. The Crosby Claimants were parties whom Crosby Yacht Yard reasonably could have expected to be affected by the negligent storage and protection of the Personal Property that was delivered into its care.

73. The Crosby Claimants and Oyster Claimants were parties whom Crosby Yacht Yard reasonably could have expected to be affected by the negligent storage and maintenance of its supplies and materials on the Crosby Premises.

74. The Crosby Claimants and Oyster Claimants were parties whom Crosby Yacht Yard reasonably could have expected to be affected by the lack of adequate fire protection and/or fire suppression equipment on the Crosby Premises.

75. As a result of the aforesaid negligence, the Claimants were caused to suffer substantial property damage, and were put to great expense in the repair of said property and were otherwise damaged.

76. The Plaintiffs, ACE, Federal, INA, Maryland Casualty and Northern, made payments to the Claimants to compensate them for the damages caused by Crosby Yacht Yard's negligence.

77. The Plaintiffs, ACE, Federal, INA, Maryland Casualty and Northern, are subrogated to the rights of the Claimants to the extent of the payments made to the Claimants.

**WHEREFORE**, the Plaintiffs pray that the Court issue judgment against Crosby Yacht Yard in an amount to fairly compensate the Plaintiffs for their damages, together with costs, interest, and such relief that the Court deems fair and reasonable.

### COUNT IV
### Negligence
### (Plaintiffs v. Oyster Harbors)

78. The Plaintiffs repeat and incorporate by reference the allegations contained in paragraphs 1 through 77, as if they were fully set forth herein.