UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

*********************************************

ACE AMERICAN INSURANCE COMPANY,
FEDERAL INSURANCE COMPANY, INSURANCE
COMPANY OF NORTH AMERICA, MARYLAND
CASUALTY COMPANY and NORTHERN
INSURANCE COMPANY,
    Plaintiffs

VS.

CROSBY YACHT YARD, INC. and
OYSTER HARBORS MARINE, INC.,
    Defendants

*********************************************

FILED
IN CLERKS OFFICE

2005 MAR 11  P 12: 39

U.S. DISTRICT COURT
DISTRICT OF MASS.

DOCKET NO. 04-12252WGY

## ANSWER OF THE DEFENDANT, OYSTER HARBORS MARINE, INC., TO PLAINTIFFS' COMPLAINT AND DEMAND FOR JURY TRIAL

1.     The defendant has no information relating to the allegations in this paragraph and specifically has no information relating to and therefore denies all allegations of the plaintiff that they are "subrogated to the rights" of individuals. The defendant admits that on or about December 10, 2003 there was a fire at the Crosby Yacht Yard in Osterville, Massachusetts and denies the remaining allegations of this paragraph.

2.     The defendant has no information relating to the allegations relating to the plaintiff, Northern Insurance Company, and therefore is unable to admit same. Further, the defendant has no information relating to alleged payments made on behalf of various individuals and therefore denies same.

3.     The defendant has no information relating to the allegations relating to the plaintiff, Maryland Casualty Company, and therefore is unable to admit same. Further, the defendant has no information relating to alleged payments made on behalf of various individuals and therefore denies same.

4.     The defendant has no information relating to the allegations relating to the plaintiff, Federal Insurance Company, and therefore is unable to admit same. Further, the defendant has no information relating to alleged payments made on behalf of various individuals and therefore denies same.

5.     The defendant has no information relating to the allegations relating to the plaintiff, ACE American Insurance Company, and therefore is unable to admit same. Further, the defendant has no information relating to alleged payments made on behalf of various individuals and therefore denies same.

6.    The defendant has no information relating to the allegations relating to the plaintiff, Insurance Company of North America, and therefore is unable to admit same. Further, the defendant has no information relating to alleged payments made on behalf of various individuals and therefore denies same.

7.    The defendant admits the allegations set forth in this paragraph.

8.    The defendant admits the allegations set forth in this paragraph.

9.    The defendant denies that this court has jurisdiction and specifically calls upon the plaintiff to prove these allegations.

10.   The defendant denies the allegation of jurisdiction, however if the court finds jurisdiction then the defendant admits the allegations of this paragraph.

11.   The defendant admits that on or about December 10, 2003, a fire occurred at the Crosby premises, a boat storage and repair facility, in Osterville, Massachusetts. The defendant admits damage occurred to various properties, including property at Oyster Harbors Marine and denies the remaining allegations of this paragraph.

12.   The allegations of this paragraph do not refer to the defendant, Oyster Harbors Marine, Inc., and we therefore decline to answer.

13.   Oyster Harbors Marine admits that there was a boat named Warchant stored by Robert Levine, and that Ronald Miller, Paul Donahue and Robert Tar all had boats in Oyster Harbors Marine yard and  agreed pursuant to a 2003-2004 storage agreement (copies of which are attached as Exhibits 1 – 9) and specifically incorporated herein for storage and that all obligations as between the parties are controlled by the terms of the agreement, otherwise the defendant denies the remaining allegations of this paragraph.

14.   The allegations of this paragraph do not apply to the defendant and we therefore decline to answer.

15.   Oyster Harbors Marine admits that a fire started at the Crosby Yacht Yard and that various properties on both the Crosby premises and the Oyster Harbors premises were damaged. Oyster Harbors Marine though denies any further allegations of this paragraph.

16.   This defendant has no information relating to the allegations of this paragraph and therefore specifically calls on the plaintiff to prove same.

17.   As to the allegations in this paragraph relating to the "Crosby claimants" and the Crosby Yacht Yard, this defendant declines to answer same insofar as they do not apply to this defendant. Insofar as the allegations in this paragraph apply to the "Oyster claimants" and/or the Oyster Harbors Marine, the defendant denies the allegations of this paragraph and specifically states that Exhibits 1 – 9 control all obligations as between the parties.

18.   The allegations of this paragraph are not directed to the defendant, Oyster Harbors Marine, who therefore declines to answer same.

2

19.  Oyster Harbors Marine admits that it conducted various operations related to the marina industry. To the extent that any allegation of this paragraph seeks to imply or input any negligent or responsibility for any damage to any person, those allegations are specifically denied.

20.  The allegations of this paragraph do not apply to the defendant and we therefore decline to answer.

21.  The allegations of this paragraph do not apply to the defendant and we therefore decline to answer.

22.  The allegations of this paragraph do not apply to the defendant and we therefore decline to answer.

23.  The allegations of this paragraph do not apply to the defendant and we therefore decline to answer.

24.  All of the "Oyster Harbors claimants" are subject to 2003 – 2004 storage agreements, Exhibits 1 thru 9, copies of which have been attached and incorporated herein. Any obligation as between the party is controlled by the 2003 – 2004 storage agreements. The defendant denies any other allegations in this paragraphs.

25.  All of the "Oyster Harbors claimants" are subject to 2003 – 2004 storage agreements, Exhibits 1 thru 9, copies of which have been attached and incorporated herein. Any obligation as between the party is controlled by the 2003 – 2004 storage agreements. The defendant denies any other allegations in this paragraphs.

26.  Oyster Harbors Marine admits that it entered into a 2003 – 2004 storage agreement with the "Oyster claimants" and that any obligation as between the parties is controlled by those agreements.

27.  The defendant admits that a boat named Warchant was stored at Oyster Harbors Marine and Robert Levine and/or Jeanne Hopkins agreed pursuant to the 2003 – 2004 storage agreement for storage and that all obligations are controlled by the terms of that agreement.

28.  The defendant agrees that Diane Comoletti agreed pursuant to the 2003 – 2004 storage agreement for storage and that all obligations are controlled by the terms of that agreement.

29.  Oyster Harbors Marine declines to answer the allegations of this paragraph insofar as they do not apply to Oyster Harbors Marine.

30.  The defendant admits that Warren and Pamela Foss agreed pursuant to the 2003 – 2004 storage agreement for storage and that all obligations are controlled by the terms of that agreement.

31.  The defendant admits that Terry Eastman agreed pursuant to the 2003 – 2004 storage agreement for storage and that all obligations are controlled by the terms of that agreement.

32.  The defendant admits that Ronald Miller agreed pursuant to the 2003 – 2004 storage agreement for storage and that all obligations are controlled by the terms of that agreement.

33.  Oyster Harbors Marine declines to answer the allegations of this paragraph in that they do not apply to Oyster Harbors Marine.

34.  Oyster Harbors Marine declines to answer the allegations of this paragraph in that they do not apply to Oyster Harbors Marine.

35.  Oyster Harbors Marine declines to answer the allegations of this paragraph in that they do not apply to Oyster Harbors Marine.

36.  Oyster Harbors Marine declines to answer the allegations of this paragraph in that they do not apply to Oyster Harbors Marine.

37.  Oyster Harbors Marine declines to answer the allegations of this paragraph in that they do not apply to Oyster Harbors Marine.

38.  Oyster Harbors Marine declines to answer the allegations of this paragraph in that they do not apply to Oyster Harbors Marine.

39.  Oyster Harbors Marine declines to answer the allegations of this paragraph in that they do not apply to Oyster Harbors Marine.

40.  Oyster Harbors Marine declines to answer the allegations of this paragraph in that they do not apply to Oyster Harbors Marine.

41.  Oyster Harbors Marine declines to answer the allegations of this paragraph in that they do not apply to Oyster Harbors Marine.

42.  Oyster Harbors Marine declines to answer the allegations of this paragraph in that they do not apply to Oyster Harbors Marine.

43.  The defendant admits that Paul Clapp agreed pursuant to the 2003 – 2004 storage agreement for storage and that all obligations are controlled by the terms of the agreement.

44.  Oyster Harbors Marine declines to answer the allegations of this paragraph in that they do not apply to Oyster Harbors Marine.

45.  The defendant agrees that Robert Tarr agreed pursuant to the 2003 – 2004 storage agreement for storage and that all obligations are controlled by the terms of the agreement.

46.    Oyster Harbors Marine declines to answer the allegations of this paragraph in that they do not apply to Oyster Harbors Marine.

47.    The defendant admits that James Harrington agreed pursuant to the 2003 – 2004 storage agreement for storage and that all obligations are controlled by the terms of the agreement.

48.    Oyster Harbors Marine declines to answer the allegations of this paragraph in that they do not apply to Oyster Harbors Marine.

49.    All of the persons identified as "Oyster claimants" agreed pursuant to a 2003 – 2004 storage agreements (Exhibits 1 – 9) and that all obligations are controlled by the terms of those agreements.

50.    Oyster Harbors Marine declines to answer the allegations of this paragraph in that they do not apply to Oyster Harbors Marine.

51.    The defendants will admit that the "Oyster claimants" agreed pursuant to a 2003 – 2004 storage agreements and that all obligations are controlled by the terms of those agreements.

52.    Oyster Harbors Marine declines to answer the allegations of this paragraph in that they do not apply to Oyster Harbors Marine.

53.    Oyster Harbors Marine declines to answer the allegations of this paragraph in that they do not apply to Oyster Harbors Marine.

54.    The defendants admit that all of the "Oyster claimants" agreed to a 2003 – 2004 storage agreements and that all obligations are controlled by the terms of those agreements.

55.    Oyster Harbors Marine declines to answer the allegations of this paragraph in that they do not apply to Oyster Harbors Marine.

56.    The defendants admit that all of the "Oyster claimants" agreed to a 2003 – 2004 storage agreements and that all obligations are controlled by the terms of those agreements.

57.    The defendant has no information relating to the allegations of this paragraph and therefore specifically deny same.

58.    The defendant has no information relating to the allegations of this paragraph and therefore specifically deny same.

## COUNT I

59.    The defendant restates answers to paragraphs 1 through 58 herein.

60.    Oyster Harbors Marine declines to answer the allegations of this paragraph in that they do not apply to Oyster Harbors Marine.

61.    Oyster Harbors Marine declines to answer the allegations of this paragraph in that they do not apply to Oyster Harbors Marine.

62.    Oyster Harbors Marine declines to answer the allegations of this paragraph in that they do not apply to Oyster Harbors Marine.

63.    Oyster Harbors Marine declines to answer the allegations of this paragraph in that they do not apply to Oyster Harbors Marine.

WHEREFORE, the defendant denies that the any party is entitled to judgment against it.

## COUNT II

64.    The defendant restates answers to paragraphs 1 through 63 herein.

65.    The "Oyster claimants" as defined in this complaint all agreed pursuant to 2003 – 2004 storage agreement and that any obligation would be controlled by the terms of those agreements. Otherwise, the defendant denies the allegations of this paragraph.

66.    The "Oyster claimants" as defined in this complaint all agreed pursuant to 2003 – 2004 storage agreement and that any obligation would be controlled by the terms of those agreements. Otherwise, the defendant denies the allegations of this paragraph.

67.    The defendant has no information relating to the allegations of this paragraph and specifically calls upon the plaintiff to prove same. Further, the defendant indicates that all of the "Oyster claimants" agreed pursuant to a 2003 – 2004 storage agreements and that any obligation is controlled by the terms of those agreements and denies any further allegations of this paragraph.

68.    The defendant has no information relating to the allegations of this paragraph and therefore denies same.

WHEREFORE, the defendant denies that the any party is entitled to judgment against it.

## COUNT III

69.    The defendant restates answers to paragraphs 1 through 68 herein.

70.    Oyster Harbors Marine declines to answer the allegations of this paragraph in that they do not apply to Oyster Harbors Marine.

71.    Oyster Harbors Marine declines to answer the allegations of this paragraph in that they do not apply to Oyster Harbors Marine.

72.     Oyster Harbors Marine declines to answer the allegations of this paragraph in that they do not apply to Oyster Harbors Marine.

73.     Oyster Harbors Marine declines to answer the allegations of this paragraph in that they do not apply to Oyster Harbors Marine.

74.     Oyster Harbors Marine declines to answer the allegations of this paragraph in that they do not apply to Oyster Harbors Marine.

75.     Oyster Harbors Marine declines to answer the allegations of this paragraph in that they do not apply to Oyster Harbors Marine.

76.     Oyster Harbors Marine declines to answer the allegations of this paragraph in that they do not apply to Oyster Harbors Marine.

77.     Oyster Harbors Marine declines to answer the allegations of this paragraph in that they do not apply to Oyster Harbors Marine.

        WHEREFORE, the defendant denies that the any party is entitled to judgment against it.

## COUNT IV

78.     The defendant restates answers to paragraphs 1 through 77 herein.

79.     The defendant admits that the "Oyster claimants" agreed to a 2003 – 2004 storage agreements and that any obligation was controlled by the terms of those agreements. The defendant denies any further allegations of this paragraph.

80.     The defendant admits that the "Oyster claimants" agreed to a 2003 – 2004 storage agreements and that any obligation was controlled by the terms of those agreements. The defendant denies any further allegations of this paragraph.

81.     The defendant admits that the "Oyster claimants" agreed to a 2003 – 2004 storage agreements and that any obligation was controlled by the terms of those agreements. The defendant denies any further allegations of this paragraph.

82.     The defendant admits that the "Oyster claimants" agreed to a 2003 – 2004 storage agreements and that any obligation was controlled by the terms of those agreements. The defendant denies any further allegations of this paragraph.

83.     The defendant admits that the "Oyster claimants" agreed to a 2003 – 2004 storage agreements and that any obligation was controlled by the terms of those agreements. The defendant denies any further allegations of this paragraph.

84.     The defendant denies the allegations set forth in this paragraph.

85.     The defendant denies the allegations set forth in this paragraph.

86.  The defendant denies the allegations set forth in this paragraph.

WHEREFORE, the defendant denies that the any party is entitled to judgment against it.

## COUNT V

87.  The defendant restates answers to paragraphs 1 through 86 herein.

88.  Oyster Harbors Marine declines to answer the allegations of this paragraph in that they do not apply to Oyster Harbors Marine.

89.  Oyster Harbors Marine declines to answer the allegations of this paragraph in that they do not apply to Oyster Harbors Marine.

90.  Oyster Harbors Marine declines to answer the allegations of this paragraph in that they do not apply to Oyster Harbors Marine.

91.  Oyster Harbors Marine declines to answer the allegations of this paragraph in that they do not apply to Oyster Harbors Marine.

92.  Oyster Harbors Marine declines to answer the allegations of this paragraph in that they do not apply to Oyster Harbors Marine.

WHEREFORE, the defendant denies that the any party is entitled to judgment against it.

## COUNT V

93.  The defendant restates answers to paragraphs 1 through 92 herein.

94.  The defendant admits that the "Oyster claimants" all agreed pursuant to a 2003 – 2004 storage agreements (Exhibits 1 – 9) and that any obligation is controlled by those agreements.

95.  The defendant admits that the "Oyster claimants" all agreed pursuant to a 2003 – 2004 storage agreements (Exhibits 1 – 9) and that any obligation is controlled by those agreements.

96.  The defendant admits that the "Oyster claimants" all agreed pursuant to a 2003 – 2004 storage agreements (Exhibits 1 – 9) and that any obligation is controlled by those agreements and the defendant denies any further allegations in this paragraph.

97.  The defendant has no information relating to the allegations of payment as made in this paragraph and specifically deny any further allegations in this paragraph.

98.  The defendant denies the allegations set forth in this paragraph.

WHEREFORE, the defendant denies that the any party is entitled to judgment against it.

## COUNT VI

99. The defendant restates answers to paragraphs 1 through 98 herein.

100. Oyster Harbors Marine declines to answer the allegations of this paragraph in that they do not apply to Oyster Harbors Marine.

101. Oyster Harbors Marine declines to answer the allegations of this paragraph in that they do not apply to Oyster Harbors Marine.

102. Oyster Harbors Marine declines to answer the allegations of this paragraph in that they do not apply to Oyster Harbors Marine.

103. Oyster Harbors Marine declines to answer the allegations of this paragraph in that they do not apply to Oyster Harbors Marine.

WHEREFORE, the defendant denies that the any party is entitled to judgment against it.

## COUNT VII

104. The defendant restates answers to paragraphs 1 through 103 herein.

105. All of the "Oyster claimants" agreed to 2003 – 2004 storage agreement and any obligation is controlled by the terms of those agreements.

106. The defendant denies the allegations set forth in this paragraph.

107. The defendant denies the allegations set forth in this paragraph.

108. The defendant denies the allegations set forth in this paragraph.

WHEREFORE, the defendant denies that the any party is entitled to judgment against it.

## COUNT VIII

109. The defendant restates answers to paragraphs 1 through 108 herein.

110. Oyster Harbors Marine declines to answer the allegations of this paragraph in that they do not apply to Oyster Harbors Marine.

111. Oyster Harbors Marine declines to answer the allegations of this paragraph in that they do not apply to Oyster Harbors Marine.

112. Oyster Harbors Marine declines to answer the allegations of this paragraph in that they do not apply to Oyster Harbors Marine.

113. Oyster Harbors Marine declines to answer the allegations of this paragraph in that they do not apply to Oyster Harbors Marine.

114.    Oyster Harbors Marine declines to answer the allegations of this paragraph in that they do not apply to Oyster Harbors Marine.

115.    Oyster Harbors Marine declines to answer the allegations of this paragraph in that they do not apply to Oyster Harbors Marine.

116.    Oyster Harbors Marine declines to answer the allegations of this paragraph in that they do not apply to Oyster Harbors Marine.

117.    Oyster Harbors Marine declines to answer the allegations of this paragraph in that they do not apply to Oyster Harbors Marine.

118.    Oyster Harbors Marine declines to answer the allegations of this paragraph in that they do not apply to Oyster Harbors Marine.

WHEREFORE, the defendant denies that the any party is entitled to judgment against it.

## COUNT IX

119.    The defendant restates answers to paragraphs 1 through 118 herein.

120.    All of the "Oyster claimants" agreed to 2003 – 2004 storage agreement and any obligation is controlled by the terms of those agreements.  The defendant denies any further allegations of this paragraph.

121.    All of the "Oyster claimants" agreed to 2003 – 2004 storage agreement and any obligation is controlled by the terms of those agreements.  The defendant denies any further allegations of this paragraph.

122.    All of the "Oyster claimants" agreed to 2003 – 2004 storage agreement and any obligation is controlled by the terms of those agreements.  The defendant denies any further allegations of this paragraph.

123.    The defendant denies the allegations set forth in this paragraph.

124.    All of the "Oyster claimants" agreed to 2003 – 2004 storage agreement and any obligation is controlled by the terms of those agreements.  The defendant denies any further allegations of this paragraph.

125.    The defendant has no information and denies the allegations of this paragraph.

126.    The defendant denies the allegations set forth in this paragraph.

WHEREFORE, the defendant denies that the any party is entitled to judgment against it.

## COUNT X

10

127.    The defendant restates answers to paragraphs 1 through 126 herein.

128.    Oyster Harbors Marine declines to answer the allegations of this paragraph in that they do not apply to Oyster Harbors Marine.

129.    Oyster Harbors Marine declines to answer the allegations of this paragraph in that they do not apply to Oyster Harbors Marine.

130.    Oyster Harbors Marine declines to answer the allegations of this paragraph in that they do not apply to Oyster Harbors Marine.

131.    Oyster Harbors Marine declines to answer the allegations of this paragraph in that they do not apply to Oyster Harbors Marine.

132.    Oyster Harbors Marine declines to answer the allegations of this paragraph in that they do not apply to Oyster Harbors Marine.

133.    Oyster Harbors Marine declines to answer the allegations of this paragraph in that they do not apply to Oyster Harbors Marine.

134.    Oyster Harbors Marine declines to answer the allegations of this paragraph in that they do not apply to Oyster Harbors Marine.

135.    Oyster Harbors Marine declines to answer the allegations of this paragraph in that they do not apply to Oyster Harbors Marine.

136.    Oyster Harbors Marine declines to answer the allegations of this paragraph in that they do not apply to Oyster Harbors Marine.

137.    Oyster Harbors Marine declines to answer the allegations of this paragraph in that they do not apply to Oyster Harbors Marine.

138.    Oyster Harbors Marine declines to answer the allegations of this paragraph in that they do not apply to Oyster Harbors Marine.

139.    Oyster Harbors Marine declines to answer the allegations of this paragraph in that they do not apply to Oyster Harbors Marine.

WHEREFORE, the defendant denies that the any party is entitled to judgment against it.

**THE DEFENDANT DEMANDS A TRIAL BY JURY OF ALL ISSUES HEREIN.**

## AFFIRMATIVE DEFENSES

1.    The defendant specifically pleads release.

2.    The defendant specifically pleads comparative negligence.

11

3.   The defendant specifically pleads lack of subject matter jurisdiction insofar as admiralty. Fed.R.Civ.P. Rule 12(b)(1).

4.   The defendant specifically pleads lack of subject matter jurisdiction insofar as diversity of citizenship. Fed.R.Civ.P. Rule 12(b)(1).

5.   The defendant specifically pleads failure to state a claim upon which relief can be granted. Fed.R.Civ.P. Rule 12(b)(6).

6.   The defendant specifically pleads failure to properly notify of any alleged breach of warranty.

Respectfully submitted,

John H. Bruno II, Esquire
B.B.O. No. 542098
Masi & Bruno
124 Long Pond Road, Unit 11
Plymouth, MA 02360
(508)747-5277

CERTIFICATE OF SERVICE
I hereby certify that a true copy of the above document was served upon the attorney(s) of record for each other party by mail / hand on
3/10/05

12

**EXHIBIT 1**

## 2003-2004 STORAGE AGREEMENT

**Robert S. Levine**
**Attn: Jeanne Hopkins**
**120 Aviation Ave.**
**Portsmouth, NH  03801**

ACCOUNT#:                              BOAT NAME: WAR CHANT

BOAT MFG: **Viking**              LOA:  68

### PLEASE FILL IN OR CORRECT THE ABOVE INFORMATION

BOAT STORAGE CHARGE   $ **3842.00**
FOR STORAGE 10/01/03 to 06/30/04

**50% DUE WITH CONTRACT** (by 10/1/03) $ **1921.00**

**50% TO BE BILLED 11/01/03**          $ **1921.00**

1. 50% of the charges set forth are due and payable upon acceptance of the contract and the remaining balance payable upon receipt of bill from Oyster Harbors Marine for storage, unless other arrangements are made. The above charge does not include any charges for winterizing, maintaining, repairing, or any other services.

2. Standard lay-up and winterizing procedures will be performed on all boats. This consists of removal, where feasible, and storage of all electronic and engine electrical equipment including batteries. This work will be billed at standard yard rates.

3. In the event additional boats, dinghies, skiffs, outboard motors, or property (including batteries and outboard tanks) are stored, they shall be stored subject to the terms and conditions herein listed, at a rate to be determined at the time of storage.

4. That additional charges will be made for the storage of the property beyond the period hereinbefore set forth, but that there will be no refund, rebate or reduction for storage for any lesser period.

5. That the yard does not carry any insurance on the stored property and will not be held responsible or liable for any damage or loss to, or of, the property listed herein, or any other property or gear stored therein, and will hold the Yard, its Agents and Employees, harmless and free from all loss or claims arising out of the presence of the Owner's said property upon the Yard's premises.

6. That all work on boats out of water, in storage will be done by the Yard, unless otherwise agreed, in which case the Owner, his Agents, Servants, Captains, and individual Guests will hold the Yard harmless and free from personal injury incurred there from.

7. The Owner agrees to pay storage charges as set forth on the face of the contract, and understands that no boat may be removed from the storage area unless all accrued storage, repair, and all other charges are paid in full. In the event the boat is sold during the term of this contract, the Owner, who signed this contract, shall be responsible for all charges authorized or required under this contract, and the boat may only be sold subject to the terms and conditions of this contract. Invoices for work - either in process, or completed - are due and payable upon presentation.

8. The yard must be notified in writing when a boat in storage is listed for sale. No one will be allowed aboard a boat for inspection, due to insurance regulations, without notification of the Yard by the Owner or his Agent. Assistance given by the yard personnel will be charged at the normal labor rate on boats listed for sale at the Yard. This charge will be waived when appropriate.

9. The Yard specifically reserves all common law, statutory and admiralty liens, created by law, including, but not limited to, mechanics and maritime liens.

10. The rights and remedies provided by the Agreement shall be in addition to all other rights and remedies provided by law.

11. This agreement shall be governed by laws of the Commonwealth of Massachusetts.

Signature: _____    Vessel's Owner/Agent          Date: _____

**Please submit a signed copy of this contract with your 50% deposit by October 1, 2003.**

**EXHIBIT 2**

DEC-07-2004  10:40    OYSTER HARBOR MARINE    5084205398    P.02/08

122 Bridge Street, Osterville, MA 02655
508-428-2017 * fax 508-420-5398

### 2003-2004 STORAGE AGREEMENT

**Mrs. Thomas Eastman**
**50 Pigeon Hill Road**
**Weston MA 02193**

ACCOUNT #:                        BOAT NAME:    **BOSTON WHALER**

BOAT MFG: **Boston Whaler**        LOA: **19**

## PLEASE FILL IN OR CORRECT THE ABOVE INFORMATION

**BOAT STORAGE CHARGE  $  $612.75**
FOR STORAGE 10/01/03 to 06/30/04

**50% DUE WITH CONTRACT** (by 10/1/03)  $  **$306.38**

**50% TO BE BILLED 11/01/03**         $  **$306.38**

1. 50% of the charges set forth are due and payable upon acceptance of the contract and the remaining balance payable upon receipt of bill from Oyster Harbors Marine for storage, unless other arrangements are made. The above charge does not include any charges for winterizing, maintaining, repairing, or any other services.

2. Standard lay-up and winterizing procedures will be performed on all boats. This consists of removal, where feasible, and storage of all electronic and engine electrical equipment including batteries. This work will be billed at standard yard rates.

3. In the event additional boats, dinghies, skiffs, outboard motors, or property (including batteries and outboard tanks) are stored, they shall be stored subject to the terms and conditions herein listed, at a rate to be determined at the time of storage.

4. That additional charges will be made for the storage of the property beyond the period hereinbefore set forth, but that there will be no refund, rebate or reduction for storage for any lesser period.

5. That the yard does not carry any insurance on the stored property and will not be held responsible or liable for any damage or loss to, or of, the property listed herein, or any other property or gear stored therein, and the Owner will obtain his own insurance and will hold the Yard, its Agents and Employees, harmless and free from all loss or claims arising out of the presence of the Owner's said property upon the Yard's premises.

6. That all work on boats out of water, in storage will be done by the Yard, unless otherwise agreed, in which case the Owner, his Agents, Servants, Captains, and Individual Guests will hold the Yard harmless and free from personal injury incurred there from.

7. The Owner agrees to pay storage charges as set forth on the face of the contract, and understands that no boat may be removed from the storage area unless all accrued storage, repair, and all other charges are paid in full. In the event the boat is sold during the term of this contract, the Owner, who signed this contract, shall be responsible for all storage authorized or required under this contract, and the boat may only be sold subject to the terms and conditions of this contract. Invoices for work - either in process, or completed - are due and payable upon presentation.

8. The yard must be notified in writing when a boat in storage is listed for sale. No one will be allowed aboard a boat for inspection, due to insurance regulations, without notification of the Yard by the Owner or his Agent. Assistance given by the yard personnel will be charged at the normal labor rate on boats listed for sale at the Yard. This charge will be waived when appropriate.

9. The Yard specifically reserves all common law, statutory and admiralty liens, created by law, including, but not limited to, mechanics and maritime liens.

10. The rights and remedies provided by the Agreement shall be in addition to all other rights and remedies provided by law.

11. This agreement shall be governed by laws of the Commonwealth of Massachusetts.

Signature: _____    Vessel's Owner/Agent    Date: _9-23-03_

**Please submit a signed copy of this contract with your 50% deposit by October 1, 2003.**

+ Janets@546.→
Wish

received
9-27-03
$852.38

**EXHIBIT 3**

122 Bridge Street, Osterville, MA 02655
508-428-2017 * fax 508-420-5398

### 2003-2004 STORAGE AGREEMENT

**Warren Foss**
**35 Elm Rock Road**
**BronxvilleNY10708**

ACCOUNT #:                    BOAT NAME:    **SWAN'S WAY**

BOAT MFG: **Unknown**          LOA: 18

### PLEASE FILL IN OR CORRECT THE ABOVE INFORMATION

**BOAT STORAGE CHARGE  $ $580.50**
FOR STORAGE 10/01/03 to 06/30/04

**50% DUE WITH CONTRACT (by 10/1/03) $ $290.25**

**50% TO BE BILLED 11/01/03         $ $290.25**

1. 50% of the charges set forth are due and payable upon acceptance of the contract and the remaining balance payable upon receipt of bill from Oyster Harbors Marine for storage, unless other arrangements are made. The above charge does not include any charges for winterizing, maintaining, repairing, or any other services.

2. Standard lay-up and winterizing procedures will be performed on all boats. This consists of removal, where feasible, and storage of all electronic and engine electrical equipment including batteries. This work will be billed at standard yard rates.

3. In the event additional boats, dinghies, skiffs, outboard motors, or property (including batteries and outboard tanks) are stored, they shall be stored subject to the terms and conditions herein listed, at a rate to be determined at the time of storage.

4. That additional charges will be made for the storage of the property beyond the period hereinbefore set forth, but that there will be no refund, rebate or reduction for storage for any lesser period.

5. That the yard does not carry any insurance on the stored property and will not be held responsible or liable for any damage or loss to, or of, the property listed herein, or any other property or gear stored therein, and the Owner will obtain his own insurance and will hold the Yard, its Agents and Employees, harmless and free from all loss or claims arising out of the presence of the Owner's said property upon the Yard's premises.

6. That all work on boats out of water, in storage will be done by the Yard, unless otherwise agreed, in which case the Owner, his Agents, Servants, Captains, and individual Guests will hold the Yard harmless and free from personal injury incurred there from.

7. The Owner agrees to pay storage charges as set forth on the face of the contract, and understands that no boat may be removed from the storage area unless all accrued storage, repair, and all other charges are paid in full. In the event the boat is sold during the term of this contract, the Owner, who signed this contract, shall be responsible for all charges authorized or required under this contract, and the boat may only be sold subject to the terms and conditions of this contract. Invoices for work - either in process, or completed - are due and payable upon presentation.

8. The yard must be notified in writing when a boat in storage is listed for sale. No one will be allowed aboard a boat for inspection, due to insurance regulations, without notification of the Yard by the Owner or his Agent. Assistance given by the yard personnel will be charged at the normal labor rate on boats listed for sale at the Yard. This charge will be waived when appropriate.

9. The Yard specifically reserves all common law, statutory and admiralty liens, created by law, including, but not limited to, mechanics and maritime liens.

10. The rights and remedies provided by the Agreement shall be in addition to all other rights and remedies provided by law.

11. This agreement shall be governed by laws of the Commonwealth of Massachusetts.

Signature: _____     Vessel's Owner/Agent     Date: 9/21/03

**Please submit a signed copy of this contract with your 50% deposit by October 1, 2003.**

received
9-25-03
$ 290.25

**EXHIBIT 4**

122 Bridge Street, Osterville, MA 02655
508-428-2017 * fax 508-420-5398

## 2003-2004 STORAGE AGREEMENT

Mr. Paul Clapp
2 Eastern Road
Acton, MA 01720

ACCOUNT #: CLAPPP                    BOAT NAME: MAULY

BOAT MFG: CABO          LOA: 37

### PLEASE FILL IN OR CORRECT THE ABOVE INFORMATION

**BOAT STORAGE CHARGE  $ 2090.50**
FOR STORAGE 10/01/03 to 06/30/04

**50% DUE WITH CONTRACT (by 10/1/03) $ 1045.25**

**50% TO BE BILLED 11/01/03         $    1045.25**

1. 50% of the charges set forth are due and payable upon acceptance of the contract and the remaining balance payable upon receipt of bill from Oyster Harbors Marine for storage, unless other arrangements are made. The above charge does not include any charges for winterizing, maintaining, repairing, or any other services.

2. Standard lay-up and winterizing procedures will be performed on all boats. This consists of removal, where feasible, and storage of all electronic and engine electrical equipment including batteries. This work will be billed at standard yard rates.

3. In the event additional boats, dinghies, skiffs, outboard motors, or property (including batteries and outboard tanks) are stored, they shall be stored subject to the terms and conditions herein listed, at a rate to be determined at the time of storage.

4. That additional charges will be made for the storage of the property beyond the period hereinbefore set forth, but that there will be no refund, rebate or reduction for storage for any lesser period.

5. That the yard does not carry any insurance on the stored property and will not be held responsible or liable for any damage or loss to, or of, the property listed herein, or any other property or gear stored therein, and the Owner will obtain his own insurance and will hold the Yard, its Agents and Employees, harmless and free from all loss or claims arising out of the presence of the Owner's said property upon the Yard's premises.

6. That all work on boats out of water, in storage will be done by the Yard, unless otherwise agreed, in which case the Owner, his Agents, Servants, Captains, and individual Guests will hold the Yard harmless and free from personal injury incurred there from.

7. The Owner agrees to pay storage charges as set forth on the face of the contract, and understands that no boat may be removed from the storage area unless all accrued storage, repair, and all other charges are paid in full. In the event the boat is sold during the term of this contract, the Owner, who signed this contract, shall be responsible for all charges authorized or required under this contract, and the boat may only be sold subject to the terms and conditions of this contract. Invoices for work - either in process, or completed - are due and payable upon presentation.

8. The yard must be notified in writing when a boat in storage is listed for sale. No one will be allowed aboard a boat for inspection, due to insurance regulations, without notification of the Yard by the Owner or his Agent. Assistance given by the yard personnel will be charged at the normal labor rate on boats listed for sale at the Yard. This charge will be waived when appropriate.

9. The Yard specifically reserves all common law, statutory and admiralty liens, created by law, including, but not limited to, mechanics and maritime liens.

10. The rights and remedies provided by the Agreement shall be in addition to all other rights and remedies provided by law.

11. This agreement shall be governed by laws of the Commonwealth of Massachusetts.

Signature: _____ Vessel's Owner/Agent    Date: 11-16-03

Please submit a signed copy of this contract with your 50% deposit by October 1, 2003.

**EXHIBIT 5**

122 Bridge Street, Osterville, MA 02655
508-428-2017 * fax 508-420-5398

## 2003-2004 STORAGE AGREEMENT

- **James Harrington**
- **C/O Dolphin Resource Group**
- **370 Main Street, Suite 850**
- **WorcesterMA01608**

ACCOUNT #:       BOAT NAME:    **BOSTON WHALER**

BOAT MFG: **Unknown**     LOA: 15 / 13

### PLEASE FILL IN OR CORRECT THE ABOVE INFORMATION

**BOAT STORAGE CHARGE  $  $483.75**
FOR STORAGE 10/01/03 to 06/30/04

**50% DUE WITH CONTRACT (by 10/1/03)  $  $241.88**

**50% TO BE BILLED 11/01/03  $  $241.88**

1. 50% of the charges set forth are due and payable upon acceptance of the contract and the remaining balance payable upon receipt of bill from Oyster Harbors Marine for storage, unless other arrangements are made. The above charge does not include any charges for winterizing, maintaining, repairing, or any other services.

2. Standard lay-up and winterizing procedures will be performed on all boats. This consists of removal, where feasible, and storage of all electronic and engine electrical equipment including batteries. This work will be billed at standard yard rates.

3. In the event additional boats, dinghies, skiffs, outboard motors, or property (including batteries and outboard tanks) are stored, they shall be stored subject to the terms and conditions herein listed, at a rate to be determined at the time of storage.

4. That additional charges will be made for the storage of the property beyond the period hereinbefore set forth, but that there will be no refund, rebate or reduction for storage for any lesser period.

5. That the yard does not carry any insurance on the stored property and will not be held responsible or liable for any damage or loss to, or of, the property listed herein, or any other property or gear stored therein, and the Owner will obtain his own insurance and will hold the Yard, its Agents and Employees, harmless and free from all loss or claims arising out of the presence of the Owner's said property upon the Yard's premises.

6. That all work on boats out of water, in storage will be done by the Yard, unless otherwise agreed, in which case the Owner, his Agents, Servants, Captains, and individual Guests will hold the Yard harmless and free from personal injury incurred there from.

7. The Owner agrees to pay storage charges as set forth on the face of the contract, and understands that no boat may be removed from the storage area unless all accrued storage, repair, and all other charges are paid in full. In the event the boat is sold during the term of this contract, the Owner, who signed this contract, shall be responsible for all charges authorized or required under this contract, and the boat may only be sold subject to the terms and conditions of this contract. Invoices for work - either in process, or completed - are due and payable upon presentation.

8. The yard must be notified in writing when a boat in storage is listed for sale. No one will be allowed aboard a boat for inspection, due to insurance regulations, without notification of the Yard by the Owner or his Agent. Assistance given by the yard personnel will be charged at the normal labor rate on boats listed for sale at the Yard. This charge will be waived when appropriate.

9. The Yard specifically reserves all common law, statutory and admiralty liens, created by law, including, but not limited to, mechanics and maritime liens.

10. The rights and remedies provided by the Agreement shall be in addition to all other rights and remedies provided by law.

11. This agreement shall be governed by laws of the Commonwealth of Massachusetts.

Signature: _____  Vessel's Owner/Agent     Date: 24 SEP 03

Please submit a signed copy of this contract with your 50% deposit by October 1, 2003.

**received**
9-29-03
# 241-88

**EXHIBIT 6**

DEC-07-2004  10:42    OYSTER HARBOR MARINE    5084205398    P.08/08

508-428-2017 * fax 508-420-5398

## 2003-2004 STORAGE AGREEMENT

**Steven D. Comoletti**
**25 Myers Farm Rd.**
**HinghamMA02043**

ACCOUNT #:                    BOAT NAME:    **FOUR SEAS 56**

BOAT MFG: **Viking**    LOA: **56**

### PLEASE FILL IN OR CORRECT THE ABOVE INFORMATION

**BOAT STORAGE CHARGE  $  $3,164.00**
FOR STORAGE 10/01/03 to 06/30/04

**50% DUE WITH CONTRACT (by 10/1/03) $  $1,582.00**

**50% TO BE BILLED 11/01/03        $  $1,582.00**

1. 50% of the charges set forth are due and payable upon acceptance of the contract and the remaining balance payable upon receipt of bill from Oyster Harbors Marine for storage, unless other arrangements are made. The above charge does not include any charges for winterizing, maintaining, repairing, or any other services.

2. Standard lay-up and winterizing procedures will be performed on all boats. This consists of removal, where feasible, and storage of all electronic and engine electrical equipment including batteries. This work will be billed at standard yard rates.

3. In the event additional boats, dinghies, skiffs, outboard motors, or property (including batteries and outboard tanks) are stored, they shall be stored subject to the terms and conditions herein listed, at a rate to be determined at the time of storage.

4. That additional charges will be made for the storage of the property beyond the period hereinbefore set forth, but that there will be no refund, rebate or reduction for storage for any lesser period.

5. That the yard does not carry any insurance on the stored property and will not be held responsible or liable for any damage or loss to, or of, the property listed herein, or any other property or gear stored therein, and the Owner will obtain his own insurance and will hold the Yard, its Agents and Employees, harmless and free from all loss or claims arising out of the presence of the Owner's said property upon the Yard's premises.

6. That all work on boats out of water, in storage will be done by the Yard, unless otherwise agreed, in which case the Owner, his Agents, Servants, Captains, and individual Guests will hold the Yard harmless and free from personal injury incurred there from.

7. The Owner agrees to pay storage charges as set forth on the face of the contract, and understands that no boat may be removed from the storage area unless all accrued storage, repair, and all other charges are paid in full. In the event the boat is sold during the term of this contract, the Owner, who signed this contract, shall be responsible for all charges authorized or required under this contract, and the boat may only be sold subject to the terms and conditions of this contract. Invoices for work - either in process, or completed - are due and payable upon presentation.

8. The yard must be notified in writing when a boat in storage is listed for sale. No one will be allowed aboard a boat for inspection, due to insurance regulations, without notification of the Yard by the Owner or his Agent. Assistance given by the yard personnel will be charged at the normal labor rate on boats listed for sale at the Yard. This charge will be waived when appropriate.

9. The Yard specifically reserves all common law, statutory and admiralty liens, created by law, including, but not limited to, mechanics and maritime liens.

10. The rights and remedies provided by the Agreement shall be in addition to all other rights and remedies provided by law.

11. This agreement shall be governed by laws of the Commonwealth of Massachusetts.

Signature: _____    Vessel's Owner/Agent    Date: 9/26/03

Please submit a signed copy of this contract with your 50% deposit by October 1, 2003.

9-26-03
$ 3,164.00

TOTAL P.08

**EXHIBIT 7**

## 2003-2004 STORAGE AGREEMENT

RONALD MILLER
1080 CHESTNUT STREET
SAN FRANCISCO, CA 94109

**BOAT NAME:** LADY

**ACCOUNT #:**

**BOAT MFG:** OBM     **LOA:** 16

## PLEASE FILL IN OR CORRECT THE ABOVE INFORMATION

**BOAT STORAGE CHARGE  $  884.00**
FOR STORAGE 10/01/03 to 06/30/04

**50% DUE WITH CONTRACT (by 10/1/03)  $  442.00**

**50% TO BE BILLED 11/01/03        $  442.00**

1. 50% of the charges set forth are due and payable upon acceptance of the contract and the remaining balance payable upon receipt of bill from Oyster Harbors Marine for storage, unless other arrangements are made. The above charge does not include any charges for winterizing, maintaining, repairing, or any other services.

2. Standard lay-up and winterizing procedures will be performed on all boats. This consists of removal, where feasible, and storage of all electronic and engine electrical equipment including batteries. This work will be billed at standard yard rates.

3. In the event additional boats, dinghies, skiffs, outboard motors, or property (including batteries and outboard tanks) are stored, they shall be stored subject to the terms and conditions herein listed, at a rate to be determined at the time of storage.

4. That additional charges will be made for the storage of the property beyond the period hereinbefore set forth, but that there will be no refund, rebate or reduction for storage for any lesser period.

5. That the yard does not carry any insurance on the stored property and will not be held responsible or liable for any damage or loss to, or of, the property listed herein, or any other property or gear stored therein, and the Owner will obtain his own insurance and will hold the Yard, its Agents and Employees, harmless and free from all loss or claims arising out of the presence of the Owner's said property upon the Yard's premises.

6. That all work on boats out of water, in storage will be done by the Yard, unless otherwise agreed, in which case the Owner, his Agents, Servants, Captains, and individual Guests will hold the Yard harmless and free from personal injury incurred there from.

7. The Owner agrees to pay storage charges as set forth on the face of the contract, and understands that no boat may be removed from the storage area unless all accrued storage, repair, and all other charges are paid in full. In the event the boat is sold during the term of this contract, the Owner, who signed this contract, shall be responsible for all charges authorized or required under this contract, and the boat may only be sold subject to the terms and conditions of this contract. Invoices for work - either in process, or completed - are due and payable upon presentation.

8. The yard must be notified in writing when a boat in storage is listed for sale. No one will be allowed aboard a boat for inspection, due to insurance regulations, without notification of the Yard by the Owner or his Agent. Assistance given by the yard personnel will be charged at the normal labor rate on boats listed for sale at the Yard. This charge will be waived when appropriate.

9. The Yard specifically reserves all common law, statutory and admiralty liens, created by law, including, but not limited to, mechanics and maritime liens.

10. The rights and remedies provided by the Agreement shall be in addition to all other rights and remedies provided by law.

11. This agreement shall be governed by laws of the Commonwealth of Massachusetts.

Signature _____ Vessel's Owner/Agent     Date: _____

Please submit a signed copy of this contract with your 50% deposit by October 1, 2003.

TOTAL P.06

**EXHIBIT 8**

122 Bridge Street
508-428-2017 * fax 508-420-5398

## 2003-2004 STORAGE AGREEMENT

**Robert Tarr, Jr.**
**Unit #2**
**3 Commonwealth Ave.**
**BostonMA02116**

ACCOUNT #:                           BOAT NAME:      **TREADER**

BOAT MFG: **Boston Whaler**        LOA: **22**

## PLEASE FILL IN OR CORRECT THE ABOVE INFORMATION

**BOAT STORAGE CHARGE  $ $1,001.00**
FOR STORAGE 10/01/03 to 06/30/04

**50% DUE WITH CONTRACT (by 10/1/03)  $ $500.50**

**50% TO BE BILLED 11/01/03           $ $500.50**

1. 50% of the charges set forth are due and payable upon acceptance of the contract and the remaining balance payable upon receipt of bill from Oyster Harbors Marine for storage, unless other arrangements are made. The above charge does not include any charges for winterizing, maintaining, repairing, or any other services.

2. Standard lay-up and winterizing procedures will be performed on all boats. This consists of removal, where feasible, and storage of all electronic and engine electrical equipment including batteries. This work will be billed at standard yard rates.

3. In the event additional boats, dinghies, skiffs, outboard motors, or property (including batteries and outboard tanks) are stored, they shall be stored subject to the terms and conditions herein listed, at a rate to be determined at the time of storage.

4. That additional charges will be made for the storage of the property beyond the period hereinbefore set forth, but that there will be no refund, rebate or reduction for storage for any lesser period.

5. That the yard does not carry any insurance on the stored property and will not be held responsible or liable for any damage or loss to, or of, the property listed herein, or any other property or gear stored therein, and the Owner will obtain his own insurance and will hold the Yard, its Agents and Employees, harmless and free from all loss or claims arising out of the presence of the Owner's said property upon the Yard's premises.

6. That all work on boats out of water, in storage will be done by the Yard, unless otherwise agreed, in which case the Owner, his Agents, Servants, Captains, and individual Guests will hold the Yard harmless and free from personal injury incurred there from.

7. The Owner agrees to pay storage charges as set forth on the face of the contract, and understands that no boat may be removed from the storage area unless all accrued storage, repair, and all other charges are paid in full. In the event the boat is sold during the term of this contract, the Owner, who signed this contract, shall be responsible for all charges authorized or required under this contract, and the boat may only be sold subject to the terms and conditions of this contract. Invoices for work - either in process, or completed - are due and payable upon presentation.

8. The yard must be notified in writing when a boat in storage is listed for sale. No one will be allowed aboard a boat for inspection, due to insurance regulations, without notification of the Yard by the Owner or his Agent. Assistance given by the yard personnel will be charged at the normal labor rate on boats listed for sale at the Yard. This charge will be waived when appropriate.

9. The Yard specifically reserves all common law, statutory and admiralty liens, created by law, including, but not limited to, mechanics and maritime liens.

10. The rights and remedies provided by the Agreement shall be in addition to all other rights and remedies provided by law.

11. This agreement shall be governed by laws of the Commonwealth of Massachusetts.

Signature: _____     Vessel's Owner/Agent     Date: **9/19/03**

**Please submit a signed copy of this contract with your 50% deposit by October 1, 2003.**

**received**
9-19-03   $ 500.50

**EXHIBIT 9**

508-428-2017 * fax 508-420-5398

## 2003-2004 STORAGE AGREEMENT

**Paul Donahue - Cape Cod**
**170 Newbury St.**
**Boston MA 02116**

ACCOUNT #:        BOAT NAME:    **GO EASY**

BOAT MFG: **Oyster Harbors Marine**     LOA: **14**

### PLEASE FILL IN OR CORRECT THE ABOVE INFORMATION

**BOAT STORAGE CHARGE**   $   **$773.50**
FOR STORAGE 10/01/03 to 06/30/04

**50% DUE WITH CONTRACT** (by 10/1/03)   $   **$386.75**

**50% TO BE BILLED 11/01/03**      $   **$386.75**

1. 50% of the charges set forth are due and payable upon acceptance of the contract and the remaining balance payable upon receipt of bill from Oyster Harbors Marine for storage, unless other arrangements are made. The above charge does not include any charges for winterizing, maintaining, repairing, or any other services.

2. Standard lay-up and winterizing procedures will be performed on all boats. This consists of removal, where feasible, and storage of all electronic and engine electrical equipment including batteries. This work will be billed at standard yard rates.

3. In the event additional boats, dinghies, skiffs, outboard motors, or property (including batteries and outboard tanks) are stored, they shall be stored subject to the terms and conditions herein listed, at a rate to be determined at the time of storage.

4. That additional charges will be made for the storage of the property beyond the period hereinbefore set forth, but that there will be no refund, rebate or reduction for storage for any lesser period.

5. That the yard does not carry any insurance on the stored property and will not be held responsible or liable for any damage or loss to, or of, the property listed herein, or any other property or gear stored therein, and the Owner will obtain his own insurance and will hold the Yard, its Agents and Employees, harmless and free from all loss or claims arising out of the presence of the Owner's said property upon the Yard's premises.

6. That all work on boats out of water, in storage will be done by the Yard, unless otherwise agreed, in which case the Owner, his Agents, Servants, Captains, and individual Guests will hold the Yard harmless and free from personal injury incurred there from.

7. The Owner agrees to pay storage charges as set forth on the face of the contract, and understands that no boat may be removed from the storage area unless all accrued storage, repair, and all other charges are paid in full. In the event the boat is sold during the term of this contract, the Owner, who signed this contract, shall be responsible for all charges authorized or required under this contract, and the boat may only be sold subject to the terms and conditions of this contract. Invoices for work - either in process, or completed - are due and payable upon presentation.

8. The yard must be notified in writing when a boat in storage is listed for sale. No one will be allowed aboard a boat for inspection, due to insurance regulations, without notification of the Yard by the Owner or his Agent. Assistance given by the yard personnel will be charged at the normal labor rate on boats listed for sale at the Yard. This charge will be waived when appropriate.

9. The Yard specifically reserves all common law, statutory and admiralty liens, created by law, including, but not limited to, mechanics and maritime liens.

10. The rights and remedies provided by the Agreement shall be in addition to all other rights and remedies provided by law.

11. This agreement shall be governed by laws of the Commonwealth of Massachusetts.

Signature: _____     Vessel's Owner/Agent     Date: _____

**Please submit a signed copy of this contract with your 50% deposit by October 1, 2003.**

received
9-24-03
# 386.75