# UNITED STATES DISTRICT COURT FOR
## THE DISTRICT OF MASSACHUSETTS

_____

ACE AMERICAN INSURANCE COMPANY, )
FEDERAL INSURANCE COMPANY, )
INSURANCE COMPANY OF NORTH AMERICA, )
MARYLAND CASUALTY COMPANY, )
NORTHERN INSURANCE COMPANY, SOLDIER )
OF FORTUNE CORPORATION, DIANE L. )
COMOLETTI, and JAMES F. CLEARY, )
                **Plaintiffs** )
                 ) **C.A. No. 04-12252-WGY**
      **v.** )
                 )
CROSBY YACHT YARD, INC. and )
OYSTER HARBORS MARINE, INC., )
             **Defendants** )
_____)

## PLAINTIFFS' AMENDED COMPLAINT

Now come the plaintiffs and, by their attorneys, file the below claims seeking recovery

for both insured and uninsured damages to certain vessels.

## PARTIES

1.     The Plaintiffs are five insurance companies, one corporation, and two

individuals:

      a.  ACE American Insurance Company

      b.  Federal Insurance Company

      c.  Insurance Company of North America

      d.  Maryland Casualty Company

      e.  Northern Insurance Company

      f.  Soldier of Fortune Corporation, a New Hampshire Corporation with a
         principal office address of 365 Boston Post Road No. 114, Sudbury,
         Massachusetts 01776

g.   Diane L. Comoletti, 25 Myers Farm Road, Hingham, Massachusetts 02043

h.   James F. Cleary, C/O UBS, 265 Franklin Street, Boston, MA 02110

(a - e above are hereinafter referred to collectively as the "Insurance Plaintiffs" and f - h

above are hereinafter referred to collectively as the "Individual Plaintiffs")

2.       The Insurance Plaintiffs are subrogated to the rights of certain claimants

referred to below to the extent of the payments made to those claimants to compensate

them for losses incurred as a result of a fire (the "Fire") which occurred on December 10,

2003 at the Crosby Yacht Yard, in Osterville, Massachusetts (the "Crosby Premises"),

and at the Oyster Harbors Marine, in Osterville, Massachusetts (the "Oyster Harbors

Premises").

3.       The plaintiff Northern Insurance Company (hereinafter referred to as

"Northern") is a duly organized corporation existing under the laws of New York with a

principal place of business at 185 Broadway, New York, New York.  Northern has made

payments under certain insurance policies to, and is subrogated to the rights of, the

following claimants:

a.   David Evans, P.O. Box 127, Laughlintown, PA 15655;

b.   William Henry, 140 Highland Street, West Newton, Massachusetts 02465:

c.   James Shay, 32 Lovers Lane, Southborough, Massachusetts 01772;

d.   Mortimer Buckley, P.O. Box 411, Osterville, Massachusetts 02655;

e.   Paul Clapp, P.O. Box 2856, Acton, Massachusetts 01720;

f.   Kevin Starr, 7 The Cartway, Mashpie, MA 02649.

4.       The plaintiff Maryland Casualty Company (hereinafter referred to as

"Maryland Casualty") is a duly organized corporation existing under the laws of

Maryland with a principal place of business at 3910 Keswick Road, in Baltimore, Maryland. Maryland Casualty has made payments under certain policies of insurance to, and is subrogated to the rights of, the following claimant:

      a. Paul Donahue, 170 Newbury Street, Boston, MA 02116.

5.     The plaintiff Federal Insurance Company (hereinafter referred to as "Federal") is a duly organized corporation existing under the laws of Indiana, with a principal place of business at 15 Mountain View Road, in Warren, New Jersey. Federal has made payments under certain insurance policies to, and is subrogated to the rights of, the following claimants:

      a. Soldier of Fortune Corporation, 365 Boston Post Road No. 114, Sudbury, Massachusetts 01776;

      b. Diane L. Comoletti, 25 Myers Farm Road, Hingham, Massachusetts 02043;

      c. Seward Johnson, Jr., P.O. Box 550, Princeton, New Jersey 08542;

      d. Warren and Pamela Foss, 35 Elm Rock Road, Bronxville, New York 10708;

      e. Ronald and Diane Miller, 311 Miller Avenue, Mill Valley, California 94941;

      f. William Weber and Kathy Rochefort, 30 Upland Road, Brookline, Massachusetts 02146;

      g. Christopher Kennedy, 158 Melrose Street, Kenilworth, Illinois 60043;

      h. Francis and Dawn Saul, 7501 Wisconsin Avenue, Number 1500, Bethesda, MD 20814;

      i. Nicholas and Evelyn Abraham, 581 Boylston Street, Boston, Massachusetts 02116;

      j. Terry Eastman, 50 Pigeon Hill Road, Weston, Massachusetts 02493.

      k. James F. Cleary, C/O UBS, 265 Franklin Street, Boston, MA 02110.

6.     The plaintiff ACE American Insurance Company (hereinafter referred to as "ACE") is a duly organized corporation existing under the laws of Pennsylvania, with a principal place of business at Two Liberty Place, 1601 Chestnut Street, Philadelphia, Pennsylvania 19103.  ACE has made payments under certain policies of insurance to, and is subrogated to the rights of, the following claimants:

     a.   Eunice Shriver, 9109 Harrington Drive, Potomac, MD 20864;

     b.   Robert Tarr, 3 Commonwealth Avenue Unit 2, Boston, Massachusetts 02116.

7.     The plaintiff Insurance Company of North America (hereinafter referred to as "INA") is a duly organized corporation existing under the laws of Pennsylvania, with a principal place of business at Two Liberty Place, 1601 Chestnut Street, Philadelphia, Pennsylvania 19103.  INA has made payments under certain policies of insurance to, and is subrogated to the rights of, the following claimants:

     a.   John Welsh, 4132 South Rainbow Street, Las Vegas, Nevada 89103;

     b.   James Harrington, 18 Eastern Point Drive, Shrewsbury, Massachusetts 01545.

8.     Plaintiff Soldier of Fortune Corporation, a New Hampshire Corporation with a principal office address of 365 Boston Post Road No. 114, Sudbury, Massachusetts 01776, incurred uninsured losses to its property as a result of the Fire, for which it has not been compensated.

9.     Plaintiff Diane L. Comoletti, an individual residing at 25 Myers Farm Road, Hingham, Massachusetts 02043, incurred uninsured losses to her property as a result of the Fire, for which she has not been compensated.

10.     Plaintiff James L Cleary, an individual with an address of C/O UBS, 265 Franklin Street, Boston, MA 02110, incurred uninsured losses to his property as a result of the Fire, for which he has not been compensated.

11.     The Defendant, Crosby Yacht Yard, Inc. (hereinafter referred to as "Crosby Yacht Yard"), is a duly organized corporation existing under the laws of Massachusetts, with a principal place of business at 72 Crosby Circle, Osterville, Massachusetts 02655.

12.     The Defendant, Oyster Harbors Marine, Inc. (hereinafter referred to as "Oyster Harbors") is a duly organized corporation existing under the laws of Massachusetts, with a principal place of business at 122 Bridge Street, Osterville, Massachusetts 02655.

JURISDICTION

13.     This court has jurisdiction over this action pursuant to 28 U.S.C. §1333(1) and 28 U.S.C. §1367(a) in that there are matters in this action that are governed by the principles of admiralty and maritime law.

14.     Venue is proper under 28 U.S.C. § 1391(a) in that the actions complained of occurred within this District.

INTRODUCTION

15.     On or about December 10, 2003, the Fire occurred at the Crosby Premises, a boat storage and repair facility in Osterville, Massachusetts, which is owned and operated by the Defendant, Crosby Yacht Yard. The Fire destroyed and severely damaged boats and other personal property delivered there by boat owners for winter storage, service, and/or repair. The Fire also destroyed and severely damaged boats and other personal property stored at the Oyster Harbors Premises, which abut the Crosby Premises.

16.    Claimants J. Seward Johnson, Jr., William Weber, Christopher Kennedy, Nicholas Abraham, B. Francis Saul III, Eunice Shriver, John Welsh, Kevin Starr, Mortimer Buckley, James Shay, William Henry and David Evans (hereinafter referred to collectively as the "Crosby Claimants") delivered their boats and certain personal property to the Crosby Yacht Yard, for winter storage, service, and/or repair during the winter of 2003-2004.  The Crosby Claimants' boats and certain items of personal property (hereinafter referred to collectively as the "Crosby Claimants' Personal Property") were accepted by and were left with the Crosby Yacht Yard pursuant to contracts for storage and/or service.  The Crosby Claimants' Personal Property was to be returned after the winter season of 2003-2004.  On and prior to December 10, 2003, the Defendant Crosby Yacht Yard was in exclusive possession, and exercised exclusive control over, the Crosby Claimants' Personal Property.  After delivery of the Personal Property by the Crosby Claimants to the Defendant Crosby Yacht Yard, the Crosby Yacht Yard took no steps to relinquish possession or control over any of the Personal Property prior to December 10, 2003.

17.    Claimants Soldier of Fortune Corporation, Diane L. Comoletti, Ronald Miller, Terry Eastman, Paul Clapp, Paul Donahue, Robert Tarr, James Harrington, James F. Cleary, and Warren Foss (hereinafter referred to collectively as the "Oyster Claimants") delivered their boats and certain personal property to Oyster Harbors, for winter storage, service, and/or repair during the winter of 2003-2004.  The Oyster Claimants' boats and certain items of personal property (hereinafter referred to collectively as the "Oyster Claimants' Personal Property") were accepted by and were left with Oyster Harbors pursuant to contracts for storage and/or service.  The Crosby Claimants' Personal

Property was to be returned after the winter season of 2003-2004. On and prior to December 10, 2003, Oyster Harbors was in exclusive possession, and exercised exclusive control over, the Oyster Claimants' Personal Property. After delivery of the Personal Property by the Oyster Claimants to the Defendant Oyster Harbors, Oyster Harbors took no steps to relinquish possession or control over any of the Personal Property.

18.     The Personal Property of the Crosby Claimants was damaged and/or destroyed while on the Crosby Premises during storage.

19.     The Personal Property of the Oyster Claimants was damaged and/or destroyed while on the Oyster Harbors Premises during storage.

20.     Pursuant to individual insurance policies, the Insurance Plaintiffs paid the Crosby Claimants and the Oyster Claimants (hereinafter referred to collectively as the "Claimants") as follows (subject to adjustment) to compensate them for their losses as a result of the Fire:

a.  INA payments by claimant and amount of payment:

|  |  |  |
|---|---|---|
| 1. | James Harrington: | $9,500.00 |
| 2. | John Welsh: | $202,500.00 |

b.  ACE payments by claimant and amount:

|  |  |  |
|---|---|---|
| 1. | Eunice Shriver: | $24,424.00 |
| 2. | Robert Tarr: | $469.99 |

c.  Northern payments by claimant and amount:

|  |  |  |
|---|---|---|
| 1. | David Evans: | $60,000.00 |
| 2. | William Henry: | $15,000.00 |
| 3. | James Shay: | $24,900.00 |
| 4. | Mortimer Buckley: | $3,118.00 |
| 5. | Paul Clapp: | $9,620.00 |
| 6. | Kevin Starr: | $425,000.00 |

    d.   Maryland Casualty payments by claimant and amount:

        1.  Paul Donahue:                $5,400.00

    e.   Federal payments by claimant and amount:

        1.  Soldier of Fortune Corp:     $425,000.00
            ♦  $36,840.00 deductible withheld.
        2.  Diane L. Comoletti:        $225,133.54
            ♦  $18,135.00 deductible withheld.
        3.  James F. Cleary:           $5,091.45
            ♦  $6,900.00 deductible withheld.
        4.  J. Seward Johnson:        $35,000.00
        5.  Warren & Pamela Foss:     $3,000.00
        6.  Francis & Dawn Saul:     $28,800.00
        7.  Ronald & Diane Miller:    $40,000.00
        8.  Christopher Kennedy:    $45,000.00
        9.  Terry Eastman:          $17,000.00
       10. Nicholas & Evelyn Abraham:  $183,389.37
       11.  William Weber & Kathy Rochefort: $6,440.00

21.    The Insurance Plaintiffs as subrogees, to the extent of payments made to the

Claimants, and the Individual Plaintiffs claim the following:

    a.   The Crosby Yacht Yard breached its contract to store, service and/or

repair the Crosby Claimants' Personal Property;

    b.   The Crosby Yacht Yard breached its warranty to adequately store and

keep from harm the Personal Property of the Crosby Claimants;

    c.   The Crosby Yacht Yard failed to return the Crosby Claimants' Personal

Property to the Crosby Claimants after the 2003-2004 winter season;

    d.   The Crosby Yacht Yard failed to exercise reasonable care in storing,

servicing, and/or repairing the Personal Property of the Crosby Claimants;

    e.   The Crosby Yacht Yard failed to exercise reasonable care in the operation

of its business.

f.   Oyster Harbors breached its contract to store, service and/or repair the

Oyster Claimants' Personal Property;

g.   Oyster Harbors breached its warranty to adequately store and keep from

harm the Personal Property of the Oyster Claimants;

h.   Oyster Harbors failed to return the Oyster Claimants' Personal Property

to the Claimants after the 2003-2004 winter season;

i.   Oyster Harbors failed to exercise reasonable care in storing, servicing,

and/or repairing the Personal Property of the Oyster Claimants.

The Insurance Plaintiffs seek recovery from Crosby Yacht Yard and Oyster Harbors of

the amounts paid to the Claimants, and the Individual Plaintiffs seek recovery of their

uninsured losses, *i.e.* the amount of the withheld deductibles.

## SUBSTANTIVE ALLEGATIONS

22.     At all times relevant to the instant litigation, Crosby Yacht Yard conducted

various boat building and repair activities on the Crosby Premises.  Upon information and

belief, Crosby's business activities involved the use, handling and storage of hazardous,

flammable and/or combustible materials on the Crosby Premises.

23.     At all times relevant to the instant litigation, Oyster Harbors conducted

various boat building and repair activities on the Oyster Harbors Premises.  Upon

information and belief, Oyster Harbors' business activities involved the use, handling and

storage of hazardous, flammable and/or combustible materials on the Oyster Harbors

Premises.

24.     Upon information and belief, at all times relevant to the instant litigation,

Crosby Yacht Yard did not have in use automatic fire suppression equipment and did not

use, handle, or store hazardous materials in the manner required by the applicable regulations, including, but not limited to 527 C.M.R. 14, in violation of orders of the Barnstable Fire Marshall, and in breach of its duty of care.

25.    At all times relevant to the instant litigation, Crosby Yacht Yard was engaged in an ongoing contractual business relationship with the Crosby Claimants whereby the Personal Property owned by the Crosby Claimants was delivered to the Crosby Yacht Yard and stored on its Premises for a fee charged by the Crosby Yacht Yard.  For additional fees, Crosby Yacht Yard performed certain maintenance and repair related to the upkeep of the boats and related items.

26.    As part of the business arrangement between Crosby Yacht Yard and the Crosby Claimants, it was and is the regular business practice of Crosby Yacht Yard to accept, store, repair, and maintain such personal property on the Crosby Premises.

27.    Crosby Yacht Yard entered into an agreement (the "Crosby storage agreement") with each of the Crosby Claimants with respect to the storage of the Personal Property.

28.    At all times relevant to the instant litigation, Oyster Harbors was engaged in an ongoing contractual business relationship with the Oyster Claimants whereby the Personal Property owned by the Oyster Claimants was delivered to Oyster Harbors and stored on its Premises for a fee charged by Oyster Harbors.  For additional fees, Oyster Harbors performed certain maintenance and repair related to the upkeep of the boats and related items.

29.     As part of the business arrangement between Oyster Harbors and the Oyster Claimants, it was and is the regular business practice of Oyster Harbors to accept, store, repair, and maintain such personal property on the Oyster Premises.

30.     Oyster Harbors entered into an agreement (the "Oyster storage agreement") with each of the Oyster Claimants with respect to the storage of the Personal Property.

31.     Prior to December 10, 2003, Federal's insured, Soldier of Fortune Corp., delivered its boat – the "War Chant," a 2003 61 foot Viking Sport Fisherman - to the Oyster Premises and placed it in the care, control, custody, and possession of Oyster Harbors to be stored for the winter of 2003-2004.  Delivered along with the boat were certain items of personal property.

32.     Prior to December 10, 2003, Federal's insured, Diane L. Comoletti, delivered her boat – the "Four Seas," a 2004 56 foot Viking Sport Fisherman - to the Oyster Premises and placed it in the care, control, custody, and possession of Oyster Harbors to be stored for the winter of 2003-2004.  Delivered along with the boat were certain items of personal property.

33.     Prior to December 10, 2003, Federal's insured, J. Seward Johnson, Jr. delivered his boat – a 1988 25 foot Wianno Senior – to the Crosby Premises and placed it in the care, custody, and possession of Crosby Yacht Yard to be stored for the winter of 2003-2004.  Delivered along with the boat were certain items of personal property.

34.     Prior to December 10, 2003, Federal's insureds Warren and Pamela Foss delivered their boat – a 1993 16 foot Verchere Runabout - to the Oyster Premises and placed it in the care, control, custody, and possession of Oyster Harbors to be stored for

the winter of 2003-2004. Delivered along with the boat were certain items of personal property.

35.    On or about October 1, 2003, Federal's insured Terry Eastman delivered his boat – a 1990 17 foot Boston Whaler Newport – to the Oyster Premises and placed it in the care, control, custody, and possession of Oyster Harbors to be stored for the winter of 2003-2004. Delivered along with the boat were certain items of personal property.

36.    On or about October 1, 2003, Federal's insured Ronald Miller delivered his boat – a 1996 16 foot Haven 12 1/2 – to the Oyster Premises and placed it in the care, control, custody, and possession of Oyster Harbors to be stored for the winter of 2003-2004. Delivered along with the boat were certain items of personal property.

37.    On or about October 30, 2003, Federal's insured William Weber delivered his boat – a 1951 15 foot Old Town - to the Crosby Premises and placed it in the care, control, custody, and possession of Crosby Yacht Yard to be stored for the winter of 2003-2004. Delivered along with the boat were certain items of personal property.

38.    Prior to December 10, 2003, Federal's insured Christopher Kennedy delivered his boat – the "Resolute," a 25 foot Wianno Senior- to the Crosby Premises and placed it in the care, control, custody, and possession of Crosby Yacht Yard to be stored for the winter of 2003-2004. Delivered along with the boat were certain items of personal property.

39.    Prior to December 10, 2003, Federal's insured Nicholas Abraham delivered his boat – a 1999 33 foot Sal Shaker 330 - to the Crosby Premises and placed it in the care, control, custody, and possession of Crosby Yacht Yard to be stored for the winter of 2003-2004. Delivered along with the boat were certain items of personal property.

40.     On or about October 1, 2003, Federal's insured Francis Saul III delivered his boat – the "Yankee Dime," a 1969 Wianno Senior Sloop - to the Crosby Premises and placed it in the care, control, custody, and possession of Crosby Yacht Yard to be stored for the winter of 2003-2004.  Delivered along with the boat were certain items of personal property.

41.     Prior to December 10, 2003, Zurich's insured Kevin Starr delivered his boat – the "Miss Daire II," a 2001 44 ½ foot Uniesse 42 - to the Crosby Premises and placed it in the care, control, custody, and possession of Crosby Yacht Yard to be stored for the winter of 2003-2004.  Delivered along with the boat were certain items of personal property.

42.     Prior to December 10, 2003, Zurich's insured James Shay delivered his boat – a 1973 25 ½ foot Wianno Senior- to the Crosby Premises and placed it in the care, control, custody, and possession of Crosby Yacht Yard to be stored for the winter of 2003-2004.  Delivered along with the boat were certain items of personal property.

43.     Prior to December 10, 2003, Zurich's insured Mortimer Buckley delivered his boat – a 2001 10 foot Caribe - to the Crosby Premises and placed it in the care, control, custody, and possession of Crosby Yacht Yard to be stored for the winter of 2003-2004. Delivered along with the boat were certain items of personal property.

44.     Prior to December 10, 2003, Northern's insured William Henry delivered his boat – a 1973 25 foot Crosby Sailboat - to the Crosby Premises and placed it in the care, control, custody, and possession of Crosby Yacht Yard to be stored for the winter of 2003-2004.  Delivered along with the boat were certain items of personal property.

45.     Prior to December 10, 2003, Northern's insured David Evans delivered his boat – a 1957 24 foot Crosby Cruiser - to the Crosby Premises and placed it in the care, control, custody, and possession of Crosby Yacht Yard to be stored for the winter of 2003-2004.  Delivered along with the boat were certain items of personal property.

46.     Prior to December 10, 2003, Maryland's insured Paul Donahue delivered his boat – a 1984 14 foot Beetle Cat - to the Oyster Harbors' Premises and placed it in the care, control, custody, and possession of Oyster Harbors to be stored for the winter of 2003-2004.  Delivered along with the boat were certain items of personal property.

47.     Prior to December 10, 2003, Northern's insured Paul Clapp delivered his boat – the "Mauly," a 2003 35 foot Cabo Flybridge - to the Oyster Premises and placed it in the care, control, custody, and possession of Oyster Harbors to be stored for the winter of 2003-2004.  Delivered along with the boat were certain items of personal property.

48.     Prior to December 10, 2003, ACE's insured Eunice Shriver delivered her boat – the "Rose of All Roses," a 1967 25 foot Wianno - to the Crosby Premises and placed it in the care, control, custody, and possession of Crosby Yacht Yard to be stored for the winter of 2003-2004.  Delivered along with the boat were certain items of personal property.

49.     Prior to December 10, 2003, ACE's insured Robert Tarr delivered his outboard motor - a 2003 3.3 hp Mercury - to the Oyster Premises and placed it in the care, control, custody, and possession of Oyster Harbors to be stored for the winter of 2003-2004.

50.     Prior to December 10, 2003, ACE's insured John Welsh delivered his boat – the "Kariel," a 1994 33 foot Blackfin - to the Crosby Premises and placed it in the care,

control, custody, and possession of Crosby Yacht Yard to be stored for the winter of 2003-2004. Delivered along with the boat were certain items of personal property.

51.     Prior to December 10, 2003, ACE's insured James Harrington delivered his boat – a 1998 13 1/2 foot Boston Whaler - to the Oyster Premises and placed it in the care, control, custody, and possession of Oyster Harbors to be stored for the winter of 2003-2004.

52.     Prior to December 10, 2003, Federal's insured James F. Cleary delivered his 10'5" hard-bottom inflatable boat and 8 hp outboard, and his custom fiberglass Bertram cockpit cabinet, to Oyster Harbors and placed it in the care, custody, control, and possession of Oyster Harbors to be stored.

53.     Upon delivery of the Crosby Claimants' Personal Property to Crosby Yacht Yard, Crosby Yacht Yard exercised exclusive control over the Personal Property through the time of the Fire.

54.     Upon delivery of the Oyster Claimants' Personal Property to Oyster Harbors, Oyster Harbors exercised exclusive control over the Personal Property through the time of the Fire.

55.     On and before the Fire, Crosby Yacht Yard was in exclusive possession of the Personal Property of the Crosby Claimants pursuant to the business arrangement described above. The Personal Property includes the boats as well as certain other items of property including, but not limited to, trailers, fishing gear, S.C.U.B.A. gear, radios and electronic equipment. At all times relevant to this litigation, the Personal Property of the Crosby Claimants was located on the Crosby Premises and in the care, control, custody, and possession of Crosby Yacht Yard.

56.    On and before the Fire, Oyster Harbors was in exclusive possession of the Personal Property of the Oyster Claimants pursuant to the business arrangement described above.  The Personal Property includes the boats as well as certain other items of property including, but not limited to, trailers, fishing gear, S.C.U.B.A. gear, radios and electronic equipment.  At all times relevant to this litigation, the Personal Property of the Oyster Claimants was located on the Oyster Harbors Premises and in the care, control, custody, and possession of Oyster Harbors.

57.    On or about December 10, 2003, the Fire erupted in and/or around buildings situated on the Crosby Premises.

58.    The Fire caused extensive damage to the Personal Property of the Crosby Claimants located on the Crosby Premises and in the care, control, custody and possession of Crosby Yacht Yard pursuant to the Crosby Storage Agreements between the Crosby Claimants and Crosby Yacht Yard.

59.    The Fire caused extensive damage to the Personal Property of the Oyster Claimants located on the Oyster Harbors Premises and in the care, control, custody and possession of Oyster Harbors pursuant to the Oyster Storage Agreements between the Oyster Claimants and Oyster Harbors.

60.    Crosby Yacht Yard has failed to return the Crosby Claimants' Personal Property to the Crosby Claimants in the same condition in which it was received it for storage.

61.    Oyster Harbors has failed to return the Oyster Claimants' Personal Property to the Oyster Claimants in the same condition in which it was received for storage.

62.     The Insurance Plaintiffs made payments to the Claimants to compensate them for damages to the Claimants' Personal Property caused by the Fire as quantified in paragraph 20 above.

63.     The Insurance Plaintiffs are subrogated to the rights of the Claimants in the Personal Property to the extent of the payments made to the Claimants.

## COUNT I
## Bailment
### (Plaintiffs v. Crosby Yacht Yard)

64.     The Insurance Plaintiffs repeat and incorporate by reference the allegations contained in paragraphs 1 through 63, as if they were fully set forth herein.

65.     The Crosby Claimants delivered their Personal Property in trust to Crosby Yacht Yard for the specific purpose of winter storage.  The Personal Property was delivered into the control of, and was accepted by, Crosby Yacht Yard.  The Personal Property was to be returned to the Crosby Claimants in the Spring of 2004.

66.     Crosby Yacht Yard failed to return the Personal Property to the Crosby Claimants in the same condition in which it was received by Crosby Yacht Yard.  As a result of Crosby Yacht Yard's failure to return the Personal Property in the same condition, the Crosby Claimants were caused to suffer substantial property damage, and were put to great expense in the repair and replacement of said property and were otherwise damaged.

67.     The Insurance Plaintiffs, with the exception of Maryland Casualty, made payments to the Crosby Claimants to compensate them for the damages caused by Crosby Yacht Yard's failure to return the Personal Property to the Crosby Claimants in the same condition as when delivered to Crosby Yacht Yard.

68.    The Insurance Plaintiffs, with the exception Maryland Casualty, are subrogated to the rights of the Crosby Claimants to the extent of the payments made to the Crosby Claimants.

**WHEREFORE**, the Insurance Plaintiffs pray that the Court issue judgment against Crosby Yacht Yard in an amount to fairly compensate the Insurance Plaintiffs for their damages, together with costs, interest, and such relief that the Court deems fair and reasonable.

### COUNT II
### BAILMENT
### (Plaintiffs v. Oyster Harbors)

69.    The Plaintiffs repeat and incorporate by reference the allegations contained in paragraphs 1 through 63, as if they were fully set forth herein.

70.    The Oyster Claimants delivered their Personal Property in trust to Oyster Harbors for the specific purpose of winter storage.  The Personal Property was delivered into the control of, and was accepted by, Oyster Harbors.  The Personal Property was to be returned to the Oyster Claimants in the Spring of 2004.

71.    Oyster Harbors failed to return the Personal Property to the Oyster Claimants in the same condition in which it was received by Oyster Harbors.  As a result of Oyster Harbors' failure to return the Personal Property in the same condition, the Oyster Claimants were caused to suffer substantial property damage, and were put to great expense in the repair and replacement of said property and were otherwise damaged.

72.    The Insurance Plaintiffs made payments to the Oyster Claimants to compensate them for the damages caused by Oyster Harbors' failure to return the

Personal Property to the Oyster Claimants in the same condition as when delivered to Oyster Harbors.

73.    The Insurance Plaintiffs are subrogated to the rights of the Oyster Claimants to the extent of the payments made to the Oyster Claimants.

74.    The Individual Plaintiffs suffered damages by Oyster Harbor's failure to return their property in the same condition as when it was delivered to Oyster Harbors.

**WHEREFORE**, the Plaintiffs pray that the Court issue judgment against Oyster Harbors in an amount to fairly compensate the Plaintiffs for their damages, together with costs, interest, and such relief that the Court deems fair and reasonable.

### COUNT III
### Negligence
### (Plaintiffs v. Crosby Yacht Yard)

75.    The Plaintiffs repeat and incorporate by reference the allegations contained in paragraphs 1 through 63, as if they were fully set forth herein.

76.    Crosby Yacht Yard, through its agents, servants, and employees, owed the Claimants a duty to use ordinary diligence and reasonable care in the storage and protection of the Personal Property and a duty to use ordinary diligence and reasonable care at all times in the conducting of its business.

77.    Crosby Yacht Yard breached its duty to the Claimants, and its breaches included, but were not limited to the following:

    a. Crosby Yacht Yard failed to use reasonable care in the manner in which it kept, stored and maintained its supplies and materials on the Crosby Premises.

b. Crosby Yacht Yard failed to use reasonable care in the manner in which it stored and protected the Personal Property that was delivered into its care, control, custody and possession.

c. Crosby Yacht Yard failed to maintain adequate fire prevention, detection and/or fire suppression equipment on the Crosby Premises.

d. Crosby Yacht Yard failed to comply with applicable codes, statutes and regulations relating to fire safety, fire prevention, fire detection and fire suppression.

78.  The Crosby Claimants were parties whom Crosby Yacht Yard reasonably could have expected to be affected by the negligent storage and protection of the Personal Property that was delivered into its care.

79.  The Crosby Claimants and Oyster Claimants were parties whom Crosby Yacht Yard reasonably could have expected to be affected by the negligent storage and maintenance of its supplies and materials on the Crosby Premises.

80.  The Crosby Claimants and Oyster Claimants were parties whom Crosby Yacht Yard reasonably could have expected to be affected by the lack of adequate fire protection and/or fire suppression equipment on the Crosby Premises.

81.  As a result of the aforesaid negligence, the Claimants were caused to suffer substantial property damage, and were put to great expense in the repair of said property and were otherwise damaged.

82.  The Insurance Plaintiffs made payments to the Claimants to compensate them for the damages caused by Crosby Yacht Yard's negligence.

83.     The Insurance Plaintiffs are subrogated to the rights of the Claimants to the extent of the payments made to the Claimants.

84.     The Individual Plaintiffs suffered damages due to the negligence of Crosby Yacht Yard.

**WHEREFORE**, the Plaintiffs pray that the Court issue judgment against Crosby Yacht Yard in an amount to fairly compensate the Plaintiffs for their damages, together with costs, interest, and such relief that the Court deems fair and reasonable.

**COUNT IV**
**Negligence**
**(Plaintiffs v. Oyster Harbors)**

85.     The Plaintiffs repeat and incorporate by reference the allegations contained in paragraphs 1 through 63, as if they were fully set forth herein.

86.     Oyster Harbors, through its agents, servants, and employees, owed the Claimants a duty to use ordinary diligence and reasonable care in the storage and protection of the Personal Property and a duty to use ordinary diligence and reasonable care at all times in the conducting of its business.

87.     Oyster Harbors breached its duty to the Claimants, and its breaches included, but were not limited to the following:

88.     Oyster Harbors failed to use reasonable care in the manner in which it kept, stored and maintained its supplies and materials on the Oyster Harbors Premises.

89.     Oyster Harbors failed to use reasonable care in the manner in which it stored and protected the Personal Property that was delivered into its care, control, custody and possession.

90.     Oyster Harbors failed to maintain adequate fire prevention, detection and/or fire suppression equipment on the Crosby Premises.

91.     Oyster Harbors failed to comply with applicable codes, statutes and regulations relating to fire safety, fire prevention, fire detection and fire suppression.

92.     The Oyster Claimants were parties whom Oyster Harbors reasonably could have expected to be affected by the negligent storage and protection of the Personal Property that was delivered into its care.

93.     The Oyster Claimants were parties whom Oyster Harbors reasonably could have expected to be affected by the negligent storage and maintenance of its supplies and materials on the Oyster Harbors Premises.

94.     The Oyster Claimants were parties whom Oyster Harbors reasonably could have expected to be affected by the lack of adequate fire protection and/or fire suppression equipment on the Oyster Harbors Premises.

95.     As a result of the aforesaid negligence, the Oyster Claimants were caused to suffer substantial property damage, and were put to great expense in the repair of said property and were otherwise damaged.

96.     The Insurance Plaintiffs made payments to the Oyster Claimants to compensate them for the damages caused by Oyster Harbors' negligence.

97.     The Insurance Plaintiffs are subrogated to the rights of the Oyster Claimants to the extent of the payments made to the Oyster Claimants.

98.     The Individual Plaintiffs suffered damages through the negligence of Oyster Harbors.

**WHEREFORE**, the Plaintiffs pray that the Court issue judgment against Oyster Harbors in an amount to fairly compensate the Plaintiffs for their damages, together with costs, interest, and such relief that the Court deems fair and reasonable.

## COUNT V
## Breach of Contract
## (Plaintiffs v. Crosby Yacht Yard)

99.     The Plaintiffs repeat and incorporate by reference the allegations contained in paragraphs 1 through 63 as if they were fully set forth herein.

100.    Crosby Yacht Yard agreed to store the Crosby Claimants' Personal Property for the 2003-2004 winter season.

101.    Crosby Yacht Yard breached its written contract by, *inter alia*, not storing the Personal Property in a safe manner.

102.    As a result of the aforesaid breach of contract, the Crosby Claimants were caused to suffer substantial property damage, and were put to great expense in the repair of said Personal Property and were otherwise damaged.

103.    The Insurance Plaintiffs, with the exception of Maryland Casualty, made payments to the Crosby Claimants to compensate them for the damages caused by Crosby Yacht Yard's failure to return the Personal Property to the Crosby Claimants as agreed to.

104.    The Insurance Plaintiffs, with the exception of Maryland Casualty, are subrogated to the rights of the Crosby Claimants to the extent of the payments made to the Crosby Claimants.

**WHEREFORE**, the Insurance Plaintiffs pray that the Court issue judgment against Crosby Yacht Yard in an amount to fairly compensate the Plaintiffs for their damages, together with costs, interest, and such relief that the Court deems fair and reasonable.

### COUNT VI
### Breach of Contract
### (Plaintiffs v. Oyster Harbors)

105.    The Plaintiffs repeat and incorporate by reference the allegations contained in paragraphs 1 through 63 as if they were fully set forth herein.

106.    Oyster Harbors agreed to store the Oyster Claimants' Personal Property for the 2003-2004 winter season.

107.    Oyster Harbors breached its written contract by, *inter alia*, not storing the Personal Property in a safe manner.

108.    As a result of the aforesaid breach of contract, the Oyster Claimants were caused to suffer substantial property damage, and were put to great expense in the repair of said Personal Property and were otherwise damaged.

109.    The Insurance Plaintiffs made payments to the Oyster Claimants to compensate them for the damages caused by Oyster Harbors' failure to return the Personal Property to the Oyster Claimants as agreed to.

110.    The Insurance Plaintiffs are subrogated to the rights of the Oyster Claimants to the extent of the payments made to the Oyster Claimants.

111.    The Individual Plaintiffs suffered damages in the amounts of their uninsured losses, namely their unpaid deductibles.

**WHEREFORE**, the Plaintiffs pray that the Court issue judgment against Oyster Harbors in an amount to fairly compensate the Plaintiffs for their damages, together with costs, interest, and such relief that the Court deems fair and reasonable.

**COUNT VII**
**Breach of Warranty**
**(Plaintiffs v. Crosby Yacht Yard)**

112.     The Plaintiffs repeat and incorporate by reference the allegations contained in paragraphs 1 through 63, as if they were fully set forth herein.

113.     Crosby Yacht Yard was obligated to use a degree of skill adequate for the due performance of its undertaking to adequately store and keep the Crosby Claimants' Personal Property until returned, and warranted that the Crosby Claimants' Personal Property would be adequately stored and kept from harm until returned.

114.     Crosby Yacht Yard breached its obligations and warranties that the Crosby Claimants' Personal Property would be adequately stored and kept from harm until returned in that the Crosby Claimants' Personal Property was substantially damaged while in the control, custody, possession, and care of Crosby Yacht Yard.

115.     The Insurance Plaintiffs made payments to the Crosby Claimants to compensate them for the damages caused by Crosby Yacht Yard's breach of warranty to return the Crosby Claimants' Personal Property to the Crosby Claimants in the same condition as when delivered to the Premises into the care, custody, possession and control of Crosby Yacht Yard.

116.     The Insurance Plaintiffs are subrogated to the rights of the Crosby Claimants to the extent of the payments made to the Crosby Claimants.

**WHEREFORE**, the Plaintiffs pray that the Court issue judgment against Crosby Yacht Yard in an amount to fairly compensate the Plaintiffs for their damages, together with costs, interest, and such relief that the Court deems fair and reasonable.

**COUNT VIII**
**Breach of Warranty**
**(Plaintiffs v. Oyster Harbors)**

117.    The Plaintiffs repeat and incorporate by reference the allegations contained in paragraphs 1 through 63, as if they were fully set forth herein.

118.    Oyster Harbors was obligated to use a degree of skill adequate for the due performance of its undertaking to adequately store and keep the Oyster Claimants' Personal Property until returned, and warranted that the Oyster Claimants' Personal Property would be adequately stored and kept from harm until returned.

119.    Oyster Harbors breached its obligations and warranties that the Oyster Claimants' Personal Property would be adequately stored and kept from harm until returned in that the Oyster Claimants' Personal Property was substantially damaged while in the control, custody, possession, and care of Oyster Harbors.

120.    The Insurance Plaintiffs made payments to the Oyster Claimants to compensate them for the damages caused by Oyster Harbors' breach of warranty by failing to return the Oyster Claimants' Personal Property to the Oyster Claimants in the same condition as when delivered to the Oyster Premises into the care, custody, possession and control of Oyster Harbors.

121.    The Insurance Plaintiffs are subrogated to the rights of the Oyster Claimants to the extent of the payments made to the Oyster Claimants.

122.    The Individual Plaintiffs suffered losses equal to the amounts of their unpaid deductibles.

**WHEREFORE**, the Plaintiffs pray that the Court issue judgment against Oyster Harbors in an amount to fairly compensate the Plaintiffs for their damages, together with costs, interest, and such relief that the Court deems fair and reasonable.

### COUNT IX
### NEGLIGENCE-RES IPSA LOQUITUR
### (Plaintiffs v. Crosby Yacht Yard)

123.    The Plaintiffs repeat and incorporate by reference the allegations contained in paragraphs 1 through 63, as if they were fully set forth herein.

124.    At the time of the Fire, the Crosby Claimants' Personal Property was under the care, management and control of, and in the possession and custody of, Crosby Yacht Yard.

125.    At the time of the Fire, the Crosby Premises were under the management and exclusive control of Crosby Yacht Yard.

126.    There has been no explanation as to the cause of the Fire.

127.    In the ordinary course of events, the Fire would not have occurred absent negligence on the part of Crosby Yacht Yard.

128.    The Crosby Claimants suffered damages to their Personal Property due to the Fire.

129.    The Oyster Claimants suffered damages to their Personal Property due to the Fire.

130.    The Insurance Plaintiffs, with the exception of Maryland Casualty, made payments to the Crosby Claimants to compensate them for the damages caused to their Personal Property by the Fire on the Crosby Premises.

131.    The Insurance Plaintiffs made payments to the Oyster Claimants to compensate them for the damages caused to their Personal Property by the Fire on the Oyster Harbors Premises.

132.    The Insurance Plaintiffs are subrogated to the rights of the Crosby and Oyster Claimants to the extent of the payments made to the Crosby and Oyster Claimants.

133.    The Individual Plaintiffs suffered losses caused by the Fire in the amounts of their unpaid deductibles.

**WHEREFORE**, the Plaintiffs pray that the Court issue judgment against Crosby Yacht Yard in an amount to fairly compensate the Plaintiffs for their damages, together with costs, interest, and such relief that the Court deems fair and reasonable.

## COUNT X
## NEGLIGENCE-RES IPSA LOQUITUR
### (Plaintiffs v. Oyster Harbors)

134.    The Plaintiffs repeat and incorporate by reference the allegations contained in paragraphs 1 through 118, as if they were fully set forth herein.

135.    At the time of the Fire, the Personal Property of the Oyster Claimants was under the care, management and control of, and in the possession and custody of, Oyster Harbors.

136.    At the time of the Fire, the Oyster Harbors Premises were under the management and exclusive control of Oyster Harbors.

137.    There has been no explanation as to failure of Oyster Harbors to control the Fire and safeguard the Personal Property of the Oyster Claimants.

138.    In the ordinary course of events, the Fire would not have quickly spread to the Oyster Harbors Premises and destroyed the Personal Property of the Oyster Claimants absent negligence on the part of Oyster Harbors.

139.    The Oyster Claimants suffered damages to their Personal Property due to the Fire.

140.    The Insurance Plaintiffs made payments to the Oyster Claimants to compensate them for the damages caused to their Personal Property by the Fire on the Oyster Harbors Premises.

141.    The Insurance Plaintiffs are subrogated to the rights of the Oyster Claimants to the extent of the payments made to the Oyster Claimants.

142.    The Individual Plaintiffs suffered losses caused by the Fire in the amounts of their unpaid deductibles.

**COUNT XI**
**Violation of M.G.L. Chapter 93A**
**(Plaintiffs v. Crosby Yacht Yard)**

143.    The Plaintiffs repeat and incorporate by reference the allegations contained in paragraphs 1 through 126, as if they were fully set forth herein.

144.    At all relevant times, the Defendant, Crosby Yacht Yard, was subject to regulatory provisions including, but not limited to, 527 C.M.R. 14, governing the use, handling and storage of hazardous, flammable and/or combustible materials on the Crosby Premises.

145.    Upon information and belief, Crosby Yacht Yard violated said regulations by, *inter alia*, failing to properly store, handle and use said materials.

146.    The acts and omissions of Crosby Yacht Yard in failing to comply with applicable sections of the Code of Massachusetts Regulations constitute unfair and deceptive acts or practices within the meaning of M.G.L. c. 93A §§ 2 and 3 and 940 C.M.R. § 3.16(3).

147.    As a result of the violation of M.G.L. c. 93A §§ 2 and 3, the Claimants were caused to suffer substantial property damage, and were put to great expense in the repair of said property and were otherwise damaged.

148.    The Claimants were among the class of persons for whose protection the applicable regulatory provisions were enacted.

149.    The Claimants were among the class of persons for whose protection M.G.L. c. 93A §§ 2 and 3 were enacted.

150.    The violations that constituted violations of M.G.L. c. 93A §§ 2 and 3 were knowing and willful.

151.    The Plaintiffs sent to the Defendant Crosby Yacht Yard a demand letter (hereinafter referred to as the "Demand Letter") that identified the complained of acts and/or practices that constitute violations of M.G.L. c. 93A §§ 2 and 3.

152.    The Demand Letter was sent no less than thirty days prior to the filing of this Complaint.

153.    The Defendant Crosby Yacht Yard has not responded to the demand for relief contained in the Demand Letter with a reasonable offer of settlement.

154.    The Insurance Plaintiffs made payments to the Claimants to compensate them for the damages caused by Crosby Yacht Yard's violation of M.G.L. c. 93A § 2.

155.    The Insurance Plaintiffs are subrogated to the rights of the Claimants to the extent of the payments made to the Claimants.

156.    The Individual Plaintiffs suffered losses due to the Fire in the amounts of their unpaid deductibles.

**WHEREFORE**, the Plaintiffs pray that the Court issue judgment against Crosby Yacht Yard in an amount to fairly compensate the Plaintiffs for their damages, together with treble damages and attorney's fees as provided for by M.G.L. c. 93A, costs, interest, and such relief that the Court deems fair and reasonable.

## JURY DEMAND

The Plaintiffs respectfully request a trial by jury on all issues.

Respectfully Submitted,
For the Plaintiffs,
By their attorneys,

/s/ Thomas D. Frothingham
Thomas D. Frothingham, BBO #645838
David J. Daly, BBO #112840
Daly Cavanaugh LLP
27 Mica Lane
Wellesley, MA  02481
(617) 951-0015
Dated: March 18, 2005