**ADJUSTMENT:**

The building loss was settled in the amount of $10,000 on Building 2 and $1,248 on Building 1. The $10,000 represents the policy limit on Building 2. The main building sustained damage to windows which were repaired at a cost of $1,248.

The insured claimed $3000 for a hydraulic trailer which is not covered under the policy. They have been advised that there is no coverage. They have also claimed $3,475 for damage to underground vent pipes for fuel tanks and $3,655 in associated wiring. There is no coverage for underground pipes.

The claimed cost for excavations associated with sumps and water pumps is also excluded.

I have afforded coverage for the paved surfaces damaged by the fire. This coverage is provided under the Broadening Endorsement.

Additionally, I allowed $647.85 for employee's tools.

The debris removal claim totaled $42,553. I have paid the policy limit of $25,000. There is no coverage for the cost to test for, monitor or assess the existence or effects of pollutants. The claimed costs associated with this totals $19,232.

A $5000 advance has been issued on EE/BI. The insured has presented a preliminary claim in excess of $45,000. I am in the process of reviewing this and have engaged HSNO to assist in my evaluation.

The cost to repair the Travel-lift scheduled for $100,000 totals $14,600. This does not include power washing.

**SUBROGATION/3RD PARTY EXPOSURE:**

REDACTED

**SALVAGE:**

Salvage is not an issue.

**INFORMATION FOR OTHER DEPARTMENTS:**

We will forward a CATU regarding value. The building totaled by fire appears to be grossly underinsured despite reported values.

**WHAT NEEDS TO BE DONE:**

• Maintain reserves as established.

OY000227

- Follow-up on insured's claim presentation.

**ENCLOSURES:**

Insured's list of damage dated 2/4/04.

OY000228

# 15 DAY REPORT

TO: FILE
FROM: RICHARD J. HAGGIS JR.,GENERAL ADJUSTER
        P.O. BOX 684
        MANSFIELD, MA 02048
        508-339-0410
REPORT DATE: 12/24/03
CLAIM # : 03-303220

**INSURED:**

Oyster Harbors Marine Inc.
122 Bridge St.
Osterville, MA 02655

**Policy Number:** IHN 5107029 (7 renewals)
**Date of Loss:** 12/10/03
**Location of Loss:** (Premises 1 Buildings 1-9) 120 Bridge St. Osterville, MA 02655

**ASSIGNMENT& CONTACT:**

Hanover received this claim on 12/11/03. Contact was made with the insured and the loss inspected that day. During my inspection I met with Yard Foreman, Craig Curtis and Kathleen in Administration. I also met with Chief John Farrington of Centerville – Osterville – Marstons Mills Fire District.

**CAUSE OF LOSS:**

Upon receipt of this loss assignment, White & Williams was notified to coordinate our O&C and subrogation investigation. They contacted EFI.

To date, the cause of loss is undetermined. We do know that the fire originated at the neighboring Crosby Yacht Yard and extended to our insured's property. Between the high winds and resins, paints and fuel, once the fire got underway all the fire fighters could do was fight a battle of containment, dumping massive amounts of water on the burning buildings.

OY000229

**RESERVE:**

Loss reserves have been established as follows:

| INCURRED RESERVE | | PAYMENTS | CURRENT RESERVE |
|---|---|---|---|
| (01) BUILDING | $10,000 | | $10,000 |
| (02) BROAD FORM | $55,000 | | $55,000 |
| (03) IM | $25,000 | | $25,000 |
| TOTAL | $90,000 | | $90,000 |

Presently, we have only a preliminary indication as to the likely extent of loss. Our reserve is based on a general overview of damage completed with the insured.

The above referenced Broad Form reserve is broken down as follows:

| | |
|---|---|
| Debris Removal | $25,000 |
| O&L | $3,000 |
| Prop. Of Others | $2,000 |
| BI | $25,000 |
| **TOTAL** | **$55,000** |

**COVERAGE:**

Coverage was confirmed using PMS, review of declarations and in discussion with the agent, Fair Insurance and North American Marine, the Underwriting Processing Co.

Policy IHN 5107029 is a Commercial Lines Policy effective 9/15/02 through 9/15/03. The date of loss of 12/10/03 is within the policy period. The policy is in the 7th renewal term with no prior fire losses having been reported. The policy is written with the Marina "Portfolio" and the insured is carrying the Property Special Broadening Form (411-0078 3/03)

Policy forms and endorsements are as follows:

- CP0010   10/00 Building and Personal Property Coverage Form
- CP1030   10/00 Causes of Loss Special Form
- CP 0109  10/00 Mass Changes

Policy limits are as follows:

- BUILDING # 2      $10,000

OY000230

The policy affords coverage up to $25,000 for debris removal of covered property (Building). There is no coverage for BPP stored in building #2. There is $50,000 in O&L coverage and $250,000 in BI which will be applicable to storage fees of boats and outboards. There is $10,000 of coverage on Tools and Clothing including Property of Others. The Boat Hoist is insured separately under the Equipment Schedule with a $100,000 limit of liability.

The policy deductible is $1000. The policy shows a 80% coinsurance requirement.

**RISK:**

The risk is a full service marina est. 1987 offering professional yacht sales, service and storage. The risk includes a large office building with marine shop and 5 separate buildings. The risk also includes a large boat lift and 2 fork lifts.

**INSURABLE INTEREST:**

The named insured is Oyster Harbors Marine, Inc. The mortgagee is listed as Fleet Bank of MA.

At this time, no other insurable interest has been identified.

**SCOPE OF LOSS:**

Fire damaged Building #2 with a limit of liability of $10,000. The building is 125 x 25 with 3 stories and constructed of wood post & beam with T11 siding and gable roof with asphalt shingles. The building was used for storage of customer's boats, outboards and stock parts.

The insured had the building demolished as directed by the town. They will send paid bills and receipts documenting the cost of demolition and debris removal.

They are also compiling a list of contents as well as a list of storage fees lost as a result of the fire.

The boat hoist has been temporarily repaired and put back into use. The insured will have a more detailed examination conducted after the holidays.

**ADJUSTMENT:**

To date, no list of damage or bills have been received. The insured is in the process of compiling their claim presentation.

Upon receipt,I will review this estimate in more detail with the insured.

OY000231

**SUBROGATION/3RD PARTY EXPOSURE:**

REDACTED

**SALVAGE:**

Salvage is not an issue.

**INFORMATION FOR OTHER DEPARTMENTS:**

We will forward a CATU regarding value. The building totaled by fire appears to be grossly underinsured despite reported values.

**WHAT NEEDS TO BE DONE:**

- Maintain reserves as established.
- Follow-up on insured's claim presentation.

**ENCLOSURES:**

Accord, coverage information, photographs, fieldnotes, PILR, Fire Report, E-mail copies to HO, Property Notification Form.

OY000232

November 8, 2004

Oyster Harbors Marine, Inc.
Peter Maryott
122 Bridge St.
Osterville, MA 02655

Re:    Claim Number:        03-303220
       Insured:             Oyster Harbors Marine, Inc.
       Date of Loss:        December 10, 2003

Dear Mr. Maryott,

Enclosed please find Sworn Statement in Proof of Loss and Statement as to Full Cost of Repair
or Replacement forms for your completion. We ask that you sign and return them retaining a
copy for your records.

Payment in the amount of $195,374.69 has been forwarded to your attention. This figure
represents the damage to Buildings 1 and 2, Business Personal Property, Debris Removal costs,
Pollutant Cleanup, Employees Tools and Underground Pipes. It also includes the Business
Income loss. I have attached a detailed spreadsheet for your review.

As discussed, you are entitled to an additional $7,799.59 which represents the recoverable
depreciation held on Business Personal Property.

As you are aware, your Hanover Insurance contract provides for full replacement cost coverage,
but the coverage is subject to certain conditions, a key one being that your must complete the
replacement before you become eligible. Since there are several possible ways in which you may
remedy your loss, we cannot determine our precise final payment to you at this time. We have,
however, determined the maximum amount we would owe you, and that amount is reflected on
the enclosed forms.

To make a supplemental claim for the recoverable depreciation holdback amount, you must notify
us of your intentions within 180 days of the loss. To collect the holdback amount, you must
submit documentation to support the incurred cost of the completed building restoration and
reconstruction and contents replacement.

OY000233

If you should have any questions or concerns regarding this claim, feel free to contact me at 508-339-0410.

Sincerely,


Richard J. Haggis Jr.
Regional General Adjuster

OY000234



```
MS                                                                    _ □ ✕
        REMOTE CLAIMS SUPPORT SYSTEM
        FINANCIAL INQUIRY SCREEN
Claim No: 03-303220    Fea :03   Insured . .:
                       Rpt Ofc: WE
Total Loss payments           15,493.25 Current Loss Reserve          0.00
Total Expense payments             0.00 Current Expense reserve       0.00

Trans Date     Payment Description      Amount       Payee
12/18/2003 Open loss Reserve            25,000.00
05/11/2004 Final                        14,600.00    OYSTER HARBORS  MARIN
07/08/2004 Subsequent                      893.25    OYSTER HARBORS  MARIN




↓↑   Enter=Continue/Commit   Esc=Cancel  F10=Menu   PgUp=Bkwd   PgDn=Fwd
     F5=Refresh    F6=Reverse Order    F9=Start Date
```

OY000235



```
 MS                                                                    _  □  ×
                          HANOVER CLAIMS SUPPORT SYSTEM
                          
 Claim No: 03-303220      Fea :02   Insured . .:
                          Rpt Ofc: WE
    Total Loss payments            160,833.85 Current Loss Reserve           0.00
    Total Expense payments           9,037.50 Current Expense reserve        0.00

    Trans Date    Payment Description           Amount        Payee
    12/18/2003 Open loss Reserve              55,000.00
    01/15/2004 Partial                        30,000.00    OYSTER HARBORS MARIN
    05/11/2004 Partial                         8,047.85    OYSTER HARBORS MARIN
    07/08/2004 Final                          24,804.00    OYSTER HARBORS MARIN
    07/13/2004 Expert Investigate Expen        1,137.50    HAGEN STREIFF NEWTON
    09/08/2004 Reopen Loss Reserve            98,000.00
    10/01/2004 Expert Investigate Expen        5,833.75    HAGEN STREIFF NEWTON
    10/01/2004 Expert Investigate Expen        2,066.25    HAGEN STREIFF NEWTON
    11/01/2004 Final                          97,982.00    OYSTER HARBORS MARIN




    ↓↑   Enter=Continue/Commit   Esc=Cancel   F10=Menu   PgUp=Bkwd   PgDn=Fwd
       F5=Refresh    F6=Reverse Order    F9=Start Date
```

OY000236



OY000237



**ALLMERICA FINANCIAL®**
**HANOVER INSURANCE®**     The Hanover Insurance Company     440 Lincoln Street
Worcester, MA 01653     **Claim Representative**
**Activity Record**

| Date | Description |
|---|---|
| 11/1/04 RH | Returned from FL Cat Duty. Reviewed w. agent. Called P. Marryot Insd - The only outstanding issue is BI The Insds claim was $143,594 They accept our measurement of $102,982. |

$102,982
($5,000) advance
$97,982

Check S/O 97,982.

There will be a HB on contents.

I will draft HB letter + final proofs + mail to Insd.

ALLMERICA FINANCIAL®
HANOVER INSURANCE®     The Hanover Insurance Company     440 Lincoln Street
Worcester, MA 01653

**Claim Representative
Activity Record**

(Oyster Harbor Marine)

| Date | Description |
|------|-------------|
| 10/26/04 RB | Rec call from Kathy at Fair Ins. (508-775-3131) looking for BI claim payment. I advised that I am in FL on storm duty & b4 I left sent accountants calculations t the Insd for review. Acc t Kathy, the offer is acceptable & claim will be finalized w. their payment. I advised that upon my return I will s/o proof & payment. |

221-4412 (4/98)

H | S | N | O

**HAGEN**

**STREIFF**

**NEWTON**

**OSHIRO**

ACCOUNTANTS, PC
CERTIFIED PUBLIC ACCOUNTANTS

September 1, 2004

Mr. Rick Haggis
Hanover Insurance
P.O. Box 684
Mansfield, MA 02048

Re:    Insured – Oyster Harbors Marine, Inc.
       Fire – Business Income Claim
       Date of Loss – December 10, 2003
       Hanover Insurance Claim No. 03-303220

Dear Mr. Haggis:

At your request, we have made a review of the books and records of Oyster Harbors Marine, Inc. regarding the claim for loss of income resulting from the fire occurring on December 10, 2003. Our review was limited to those books and records that were pertinent in establishing the extent of loss. Since our analysis is not comprehensive in nature, it is subject to the accuracy of the information provided by the assured. This report, and any other information provided by us, is furnished solely for the purpose of the adjustment of this loss and is subject to the interpretation of the insurance coverage, which does not necessarily conform to generally accepted accounting principles. The following comments describe the nature and extent of our examination. Attachment A and Schedules 1 through 5 are enclosed and made part of this report.

## BACKGROUND AND CLAIM

Oyster Harbor Marine, Inc. (OHM) is located in Osterville, Massachusetts. The Osterville site stores approximately 300 to 325 boats each season. On December 10, 2003, there was a fire at the adjacent Crosby Yacht yard. The fire caused damage and/or destruction to boats and outboards stored on the property, as well as destroying one building.

OHM collects fees for storage of boats over the winter and also performs work on some of the stored boats. The type of work performed includes painting, cleaning and mechanical work. This work is performed by OHM employees and is billed to customers. (There is also some detailing work that is subcontracted out.)

The insured has presented a claim for lost storage fees on boats and outboards that were damaged or destroyed and lost revenue related to work that would have been done on the boats. In total, the insured is claiming $143,594 in business income losses, relating to claimed lost sales and claimed continuing payroll expenses, shown on Attachment A. Boat sales account for 85% of OHM's annual sales of approximately $40 million. Other revenues include labor and materials for work performed on boats by OHM, fuel sales, subcontract sales for work performed by others (such as detailing, welding and sail work), maintenance sales, mooring rentals and storage fees.

**OY000240**

Atlanta, Boston, Chicago, Dallas, Hartford, Houston, Los Angeles, New Jersey, New York, Newport Beach, Providence, Sacramento, San Francisco, Walnut Creek

647 Putnam Pike  |  Greenville, RI 02828  |  Phone: (401) 949-8001  |  Fax: (401) 949-8111  |  Web: www.hsno.com

Mr. Rick Haggis
September 1, 2004
Page 2 of 6

## ANALYSIS

Financial Statements
We reviewed the insured's financial statements associated with the Yard department. This department includes Labor, Material and Storage Fee sales and related expenses. We reviewed the sales associated with Labor Sales, Material Sales, Subcontract Sales and Storage Fees from October 2001 through May 2004 to get an understanding of revenues associated with the claimed revenue categories.

The insured allocates Storage contract fees over the course of the winter from approximately November through March or April. We noted that Storage Fees increased during the '03-'04 season. Per the insured, there were increased Storage Fees during the winter of 2003/2004 compared to prior years due to expanded capacity related to additional leased land near the Barnstable Dump.

We noted that Labor Sales and Material Sales both decreased in the period from (October 2003 through May 2004) compared to the prior 3 years. Labor sales for the October to May timeframe had been in decline over the prior 2 years, while Material sales had fluctuated.

The claim associated with lost work amount to less than 5% of Labor and Material recorded over six months (December to May). Our analysis of the claim is based on the evaluation of the specifically identified losses by the insured, rather than on the analysis of sales trends given that the overall loss claimed represents a relatively small percentage of the business and that expanded capacity for boat storage obscures the losses related to Storage Fees on a top level. We further analyzed the detail and supporting documentation associated with the revenue categories for which the insured is claiming lost revenues due to the fire. Our analysis of the claim follows.

Storage Fees - Boats
On Schedule 1, we have outlined the insured's claim related to lost storage fees for damaged boats. There were 53 customers for which the insured issued credits related to damaged boats. The insured provided customer storage contracts, statements and invoices identifying fees that were due by these customers for the season when the fire occurred. A sample of customer statements obtained during our site visit showed the customer billing and payment history. Some of the statements showed billing and payments history as far back as August 2001.

Customer storage fees for the season ranged from $200 to $3,842 depending on the size of the boat. The contracts provided were for storage from October 1, 2003 through June 30, 2004. We noted per our review of storage contracts provided, each of the claimed lost storage fees agreed to the signed customer contracts. Per the contracts, 50% of the fees were due with the contract, by October 1, 2003. The additional 50% was billed to customers on November 1, 2003.

**OY000241**

H | S | N | O
Certified Public Accountants

Mr. Rick Haggis
September 1, 2004
Page 3 of 6


Most of the customers were issued credits against their existing accounts (statements) for refunds of storage fees. There is one customer for which a refund check was issued. The insured provided statements for each of the customers indicating charges and payments made by customers. During our site visit on July 21, 2004, we examined a sample of invoices issued to customers for storage fees. All invoiced amounts agreed to amounts noted on customer's statements for selected customers. Based on our review of customer statements, invoices and payments, the insured has substantiated $43,317 in claimed lost customer storage fees for damaged boats.

Storage Fee - Outboards
The insured's claim for storage refunds for damaged or lost outboards (engines) is shown on Schedule 2. There were 34 customers for which the insured issued credits related to damaged outboards. The insured provided customer statements and invoices for our review.

Storage fees for outboards were either $60 or $85. In reviewing data with Kathleen Kenneally of OHM, she indicated two items that should be excluded from their original claim of $2,320; one due to the customer's outboard being abandoned and the other because the engine was not damaged. Other than these items, all other customer invoices agreed to the billings noted on the insured's claim and agreed to claimed refunds indicated on the statements provided. Based on our review, the insured has substantiated $2,030 in lost storage fees for outboards.

Lost Work Revenue
The insured has claimed $52,305 in lost work revenue for 36 boats for work that was expected to be performed on the damaged boats during the winter and spring after the fire. These items are outlined on Schedule 3.

The insured provided the current year's work order for pre-launch and commission work that included painting, varnishing and other mechanical and boat preparation type work. Also provided were prior year's invoices outlining the charges associated with similar work performed in the prior year for these customers. During our site visit, we reviewed a sample of prior year work orders and verified that expected work noted on current year work orders agreed to the prior year work orders and prior year invoices.

The insured's claim noted total invoiced amounts in the prior year including sales tax. We have separated the items related to labor and parts and have excluded sales tax from the claimed amounts. Some prior year invoices noted additional work that was not noted on the current year work order. Only work noted on the current year work order was included within our analysis.

One customer's current year work order was not provided. Per OHM, customer Mellon did not yet have a current year work order because the work was not to be performed until late in the

H | S | N | O
Certified Public Accountants

Mr. Rick Haggis
September 1, 2004
Page 4 of 6

spring of 2004. We have excluded this amount from the claim ($1,278) because no work order has been provided to establish that this work would have been done. We noted that other customers did have work orders for work expected to be performed in the Spring of 2004.

In total, the insured has substantiated $41,476 in lost labor revenue and $8,135 in lost parts revenue for total lost work revenue of $49,611.

Other Lost Work Revenue
Additional claimed lost work revenue is outlined on Schedule 3A. There were 3 customers for which there were current year work orders but these customers did not have work performed in the prior year. To support these claimed items, the insured provided prior year work orders and invoices for other similar boats.

These claimed work orders had pre-launch and commission work such as painting, varnishing and other mechanical and boat preparation type work. Two customers (Levine and Laurendeau) had work orders dated after the fire, 2/12/04 and 4/6/04. Per our conversation with Kathleen Kenneally, these work orders were prepared based on our requests of supporting work order detail. We have excluded these post loss work orders from our analysis because these do not appear to be commitments that were in place prior to the fire.

Based on our review of the documentation provided, the insured has substantiated $12,323 in lost labor revenue and $6,845 in lost parts revenue for total lost work revenue of $19,168.

Lost Revenue for Work Performed Prior to or Due to Fire
The insured had 4 customers for which they performed work on their boats prior to the fire that were later damaged in the fire. There were also 2 customers that OHM performed work on their boats due to the fire. Per the insured, these invoices were not sent out to customers because their boats were damaged or lost in the fire. These items are outlined on Schedule 4. Total claimed losses related to these items are $1,847.

It appears that although the insured is entitled to collect for work performed pre-fire, the insured feels they cannot bill customers for this work. We do not believe this constitutes a valid accounts receivable claim or lost revenue claim under this loss. Also, since the boats were not owned by OHM, it would appear that work performed because of the fire should be covered by the customer's insurance policy. We have taken exception to the $1,847 claimed items related to work performed prior to the fire and due to the fire.

Payroll Expense Claimed
The insured's claim included $15,313 in payroll expense for the 2 days when workers were unable to work but were paid by OHM. On December 11 and 12, 2003 some workers were unable to work because police restricted access to the site. This is normal continuing payroll

**OY000243**

H | S | N | O
Certified Public Accountants

Mr. Rick Haggis
September 1, 2004
Page 5 of 6

expense. HSNO has excluded it from our loss calculation.

The insured further indicated that there also would have been billable hours associated with some of these employees. However, any lost billable time would be included within the Lost Work revenues noted above.

Cost of Sales
Based on our discussions with a representative of OHM, Mark Joseph, it is our understanding that Subcontract sales are comprised of certain services such as detailing and welding. We reviewed the detail for the work orders claimed and did not observe any work descriptions that might be considered Subcontract sales. Kathleen Kenneally of OHM advised that none of the work indicated on the work orders would have been performed by Subcontractors.

We have outlined on Schedule 5 the 2002 Revenues and Cost of Sales associated with the affected Yard. Based on our review of the documentation provided and discussions with representatives of OHM, we have discontinued material costs associated with Lost Work Revenues for materials of $11,144.

OHM indicated that they continued to pay all employees. Our review of the payroll data indicated that there was no discontinued payroll in the period after the fire. Because "rework" costs are a relatively small expense as percent of sales, and include some labor expense, we have not included this amount as a discontinued expense.

## SUMMARY

As shown on Attachment A and the detailed supporting schedules, we have anticipated a business income loss of $102,982. We have taken exception to additional claims of $1,848 of un-billable items and $15,313 in normal continuing payroll expenses. It is our understanding that coinsurance does not apply to the business income claim.

We have not had access to property loss records that would allow us to confirm that the boats for which lost revenues are claimed were actually destroyed or damaged in the fire. If you would like us to confirm this, please advise, but we believe you may be able to do so with the loss related records in your possession.

We inquired as to any income earned by OHM on boat sales to customers whose boats were damaged (sales due to the fire). We were provided with a summary of 4 boats that were replaced by OHM due to the fire. Supporting documentation was not provided. However, the gross profit margin noted on the summary is indicative of gross profit margins noted on the financial statements. The summary outlines boat sales of $62,875, with total gross profits of $7,751.

**OY000244**



H | S | N | O
Certified Public Accountants

Mr. Rick Haggis
September 1, 2004
Page 6 of 6

We also inquired as to whether OHM performed any repairs to the damaged boats that were billed to customers or the customer's insurance company. Ms. Kenneally advised that OHM did not perform this type of work and the repair work had to be performed by another boat yard.

We have enjoyed being of service to you and hope the enclosed accounting information will be of assistance to you in the adjustment of this claim. If you have any questions or require any additional information, please do not hesitate to contact us.

Sincerely,

**HAGEN, STREIFF, NEWTON & OSHIRO, ACCOUNTANTS, P.C.**

By: Peter Fogarty, CPA, CFE

OY000245

**H | S | N | O**
Certified Public Accountants

ATTACHMENT A

## INSURED - OYSTER HARBORS MARINE, INC.
### FIRE - BUSINESS INCOME CLAIM
### DATE OF LOSS - DECEMBER 10, 2003

### CLAIM SUMMARY

| Description | | As Claimed | Exception Noted | Per HSNO | Schedule |
|---|---|---|---|---|---|
| Lost Storage Fees | | | | | |
| Refunded fees for destroyed boats | | $ 43,317 | - | $ 43,317 | 1 |
| Refunded fees for destroyed outboards | | 2,320 | (290) | 2,030 | 2 |
| Subtotal | | 45,637 | (290) | 45,347 | |
| | | | | | |
| Lost Labor & Materials Revenues | | | | | |
| Lost revenue for prerelaunch and commission | | 52,305 | (2,694) | 49,611 * | 3 |
| Prelaunch and commission damaged boats | | 28,491 | (9,323) | 19,168 * | 3A |
| Subtotal | | 80,796 | (12,017) | 68,779 | |
| Unbilled and other invoices | | 1,848 | (1,848) | - | 4 |
| Lost Revenues | | 128,281 | (14,155) | 114,126 | |
| | | | | | |
| Payroll Expense | | 15,313 | (15,313) | - | |
| | | | | | |
| **Less:** | | | | | |
| Cost of Sales: | | | | | |
| * Materials Cost-Parts (A) | 74.39% | - | 11,144 | 11,144 | 3 & 3A |
| **Total Anticipated Loss** | | **$143,594** | **$ (40,612)** | **$ 102,982** | |

Notes:
  (A) Materials (Parts Sales)

| | |
|---|---|
| Schedule 3 | $ 8,134.92 |
| Schedule 3A | 6,845.23 |
| Total Materials | $ 14,980.15 |
| | |
| Materials as % of Material Sales | 74.39% |
| Materials Cost | $ 11,144 |

OY000246

H│S│N│O
Certified Public Accountants

**SEE ATTACHED CONSULTANT'S REPORT**